Forrest Kevin **BOLLINGER**, Appellant,

v.

**STATE of Texas, Appellee.**

No. 11–06–00077–CR.

Court of Appeals of Texas,
Eastland.

April 5, 2007.

---

**3.** *See ante* at p. 2 n. 1.

Forrest Kevin Bollinger, Plainview, pro se.

Eric Kalenak, Asst. Midland County Dist. Atty's Office, Midland, for appellant.

Al Schorre, District Attorney, Midland, for appellee.

Panel consists of WRIGHT, C.J., McCALL, J., and STRANGE, J.

## OPINION

RICK STRANGE, Justice.

The jury convicted Forrest Kevin Bollinger of possession of a firearm by a felon, and the trial court assessed punishment at thirty-five years confinement. We affirm.

### I. *Background Facts*

Shortly after midnight on January 24, 2005, Bollinger was stopped on Interstate 10 by two Sutton County Sheriff's deputies for speeding. The deputies asked their dispatcher to check Bollinger's license plate and driver's license numbers and the driver's license number of Bollinger's passenger. The dispatcher reported that the passenger had an outstanding warrant, and he was taken into custody. No outstanding warrant was reported for Bollinger. The deputies searched the passenger compartment of Bollinger's car and found a marihuana pipe in the right door panel on the passenger's side. Bollinger's passenger admitted that the pipe was his.

The deputies then opened Bollinger's trunk. Inside were several rifles and shotguns. The weapons were not in cases, but were stacked on top of each other. The deputies suspected that the guns had been stolen, and they asked Bollinger to accompany them to the sheriff's office. Bolling-

er did so, and the deputies ran the guns' serial numbers through a database and learned that they had not been reported stolen. The guns were returned to Bollinger, and he was allowed to leave.

Later that day, Richard D. Davis returned home after an extended absence. He noticed that his dog was not in the backyard and, when he investigated, saw that a sliding glass door was open and that his dog was inside. He searched his house and discovered that several guns had been taken from a gun cabinet. He contacted the police and reported the theft of eight rifles and shotguns, and he provided them with a serial number for each gun. The serial numbers Davis provided matched those the Sutton County deputies had previously found on the guns in Bollinger's trunk.

Bollinger was indicted in Midland County for possession of a firearm by a felon. Bollinger pleaded not guilty and was tried by a jury. The jury found him guilty of the charged offense, and the trial court assessed his punishment at thirty-five years confinement.

## II. *Issues*

Bollinger challenges his conviction with six issues. Bollinger contends that the evidence is legally and factually insufficient to support his conviction because the State failed to prove that he possessed a firearm in Midland County, that the evidence from his trunk should have been suppressed, that the State's closing argument was improper, that he was denied the effective assistance of counsel, and that his continued incarceration violates his right to due process.

## III. *Analysis*

*A. Was the Evidence Legally and Factually Sufficient?*

Bollinger's insufficiency challenges focus on three elements of the State's case. He argues that there was insufficient evidence of possession, possession of a firearm, or possession of a firearm in Midland County.

### 1. Standard of Review.

In order to determine if the evidence is legally sufficient, we must review all of the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). To determine if the evidence is factually sufficient, the appellate court reviews all of the evidence in a neutral light. *Watson v. State*, 204 S.W.3d 404, 414 (Tex. Crim.App.2006). Then the reviewing court determines whether the evidence supporting the verdict is so weak that the verdict is clearly wrong and manifestly unjust or whether the verdict is against the great weight and preponderance of the conflicting evidence. *Id.* at 414–15. The jury, as the finder of fact, is the sole judge of the weight and credibility of the witnesses' testimony. TEX.CODE CRIM. PROC. ANN. art. 36.13 (Vernon 2007), art. 38.04 (Vernon 1979).

We analyze the sufficiency of the evidence to prove possession of a firearm by a felon under the rules adopted for determining the sufficiency of the evidence in cases of possession of a controlled substance. *Nguyen v. State*, 54 S.W.3d 49, 52 (Tex.App.-Texarkana 2001, pet. ref'd). The State must prove the following: (1) that the accused exercised actual care, control, or custody of the firearm; (2) that he was conscious of his connection with it; and (3) that he possessed the firearm knowingly or intentionally. *Id.* (citing *Brown v. State*, 911 S.W.2d 744, 747 (Tex. Crim.App.1995)).

### 2. *Possession.*

A person commits a possession offense only if he voluntarily possesses the prohibited item. TEX. PEN.CODE ANN. § 6.01(a) (Vernon 2003). Possession is a voluntary act "if the possessor knowingly obtains or receives the thing possessed or is aware of his control of the thing for a sufficient time to permit him to terminate his control." TEX. PEN.CODE ANN. § 6.01(b) (Vernon 2003). The State does not have to prove that the accused had exclusive possession of the firearm; joint possession is sufficient to sustain a conviction. *Cude v. State,* 716 S.W.2d 46, 47 (Tex.Crim.App. 1986). The State can meet its burden with direct or circumstantial evidence, but it must establish that the defendant's connection with the firearm was more than fortuitous. *Brown,* 911 S.W.2d at 747.

When the firearm is not found on the accused's person or is not in the accused's exclusive possession, additional facts must affirmatively link the accused to the firearm. *Jones v. State,* 963 S.W.2d 826, 830 (Tex.App.-Texarkana 1998, pet. ref'd). Factors that may establish affirmative links include the following: whether the firearms were in a car driven by the accused, whether the firearms were in a place owned by the accused, whether the firearms were conveniently accessible to the accused, whether the firearms were found in an enclosed space, and whether the accused made any affirmative statement connecting him to the firearms. *Corpus v. State,* 30 S.W.3d 35, 38 (Tex.App.-Houston [14th Dist.] 2000, pet. ref'd). No set formula of facts exists to dictate a finding of affirmative links sufficient to support an inference of knowing possession. *Taylor v. State,* 106 S.W.3d 827, 830 (Tex.App.-Dallas 2003, no pet.). The affir-

mative links ordinarily emerge from an orchestration of several factors and the logical force they have in combination. *Nguyen,* 54 S.W.3d at 53.

The firearms were not on Bollinger's person or in his exclusive control, but when the evidence is viewed in the light most favorable to the jury's verdict, it is legally sufficient to support a finding of possession because of the links between him and the weapons. The record does not indicate who owned the vehicle, but Bollinger was the driver at the time of the stop and he left in it after being released. When the deputies opened the trunk, Bollinger told them that the firearms belonged to his dad and uncle and that he and his passenger were bringing them back from Midland.[1] After checking the serial numbers, the deputies returned the weapons to Bollinger who took them, put them back in the vehicle, and left. Because Bollinger's passenger was arrested during the traffic stop, Bollinger had sole possession of and access to the firearms at that point in time. Bollinger's conduct, from the moment the trunk was opened until the firearms were returned to him, is consistent with a finding that they were in his care, custody, and control and that he was knowingly transporting them. The evidence is legally sufficient to support a finding of possession.

When the evidence is viewed in a neutral light, it is also factually sufficient. Bollinger focuses on the fact that his passenger could have placed the firearms in the trunk without his knowledge and on inconsistencies in the State's evidence. The State, however, was not required to prove that Bollinger had exclusive possession of the firearms, and any inconsisten-

---

**1.** At trial, the deputies testified that Bollinger told them he was "coming" from Midland.

On the videotape, Bollinger said he was "bringing" the guns from Midland.

cies in the State's evidence were within the jury's province to resolve.

Bollinger correctly notes that the firearms were not in his exclusive control but were in a locked trunk and that his passenger could have placed them there without his knowledge. The record, however, is inconsistent with this hypothesis. When police discovered drug paraphernalia during their search of the car, Bollinger's passenger claimed possession of it. But when the trunk was opened, Bollinger did not act surprised to see the firearms or disclaim any knowledge of them, nor did his passenger claim possession. Instead, Bollinger's statements to the deputies support no conclusion other than the fact that he knew they were there.

Bollinger also correctly notes that the videotape does not show any firearms, that the dispatcher did not see any firearms, that the videotape counter indicated that the traffic stop happened at the same time the dispatcher testified that she researched the serial numbers, that there was some conflicting evidence of whether eight guns were checked or just four, and that the deputies could not match the serial numbers with any particular weapon. These challenges go to the credibility of the individual witnesses and the weight to be given to their testimony and, therefore, were for the jury to resolve. *Fuentez v. State*, 196 S.W.3d 839, 846 (Tex.App.-Eastland 2006, no pet.).

The video camera was mounted in the deputies' vehicle and did not record what was in the trunk because of the angle. However, the jury saw the videotape and heard the officer's reaction to seeing the firearms and, more importantly, heard Bollinger's response to the officers. He did not deny that there were firearms in the trunk, but explained why they were there. The mere fact that the clock on the video camera and the clock on the dis-

patcher's computer were inconsistent is of no consequence.

Similarly, the fact that the dispatcher did not see the weapons, but just entered serial numbers into the database, is of no moment. The jury heard both deputies testify that they saw the firearms. The jury was able to compare the deputies' descriptions of the firearms, the serial numbers the Sutton County Sheriff's office researched, and Davis's testimony. Deputy Oscar Chavez testified that there were eight weapons. He described some of them and told the jury the eight serial numbers that were collectively taken off of the weapons. These eight serial numbers matched the eight serial numbers Davis testified were on his missing weapons. Furthermore, even though Bollinger told the deputies that the firearms belonged to his dad and uncle, he offered no evidence at trial to dispute Davis's contention that they had been stolen from his house. The evidence was factually sufficient to support the jury's finding of possession.

### 3. Of a Firearm.

The trial court instructed the jury that "firearm" meant "any device designed, made or adapted to expel a projectile through a barrel by using the energy generated by an explosion or burning substance, or any device readily convertible to that use." *See* TEX. PEN.CODE ANN. § 46.01(3) (Vernon 2003). Bollinger argues that this required the State to prove beyond a reasonable doubt that he possessed an actual firearm capable of its intended use as compared with something that might look like a firearm.

Bollinger's argument overstates the State's burden. The State was not required to prove that any of the firearms were operable. *See Lewis v. State*, 852 S.W.2d 667, 669 (Tex.App.-Houston [14th Dist.] 1993, no pet.) (in prosecution

for unlawful possession of a short-barrel firearm, the State was not required to prove that the weapon was operable). *But cf. In re K.H.,* 169 S.W.3d 459, 464 (Tex. App.-Texarkana 2005, no pet.) (inoperable pellet gun was not a firearm as defined by Section 46.01(3)). Section 46.01(3) does exclude antiques or curio firearms manufactured before 1899, as well as replicas of antiques or curios manufactured before 1899—if the replica does not use rim fire or center fire ammunition—from the definition of firearm. The State, however, is not required to prove that a firearm is not an antique, curio, or replica thereof. *Jackson v. State,* 575 S.W.2d 567, 569 (Tex. Crim.App.1979).

▆ The record sufficiently establishes that Bollinger had possession of a firearm as defined by the statute. The weapons were repeatedly described by the deputies as rifles, high-powered rifles, and shotguns. They referred to some by brand, such as Weatherby, Browning, Kimber, and Lefever; and they described some as being very expensive. Davis described each of the eight weapons by brand and caliber. They ranged from a .22 caliber rifle to a .50 caliber black powder rifle and included a 12–gauge and a 20–gauge shotgun. There was no evidence to suggest that the weapons were anything other than actual firearms. The evidence, therefore, is legally and factually sufficient to support the jury's finding that Bollinger possessed a firearm.

*4. In Midland County.*

▆ The State was required to prove that Bollinger possessed a firearm in Midland County, but because venue is not an essential element of the offense, it need only be proven by a preponderance of the evidence. *Black v. State,* 645 S.W.2d 789, 790 (Tex.Crim.App.1983). Proof of venue may be established through direct or circumstantial evidence. *Id.* The trier of fact

may make reasonable inferences from the evidence to decide the issue of venue. *Bordman v. State,* 56 S.W.3d 63, 70 (Tex. App.-Houston [14th Dist.] 2001, pet. ref'd). In our review, we determine if, from the evidence, the jury reasonably could have concluded that Bollinger possessed a firearm in Midland County. *Sudds v. State,* 140 S.W.3d 813, 818 (Tex.App.-Houston [14th Dist.] 2004, no pet.).

Bollinger argues that the State did not carry its burden of proof because no eyewitness saw him with the firearms outside Sutton County and no witness saw him in Midland County on the date alleged in the indictment. Bollinger acknowledges that the deputies testified that he told them that he was coming from Midland, but he contends that this is insufficient to establish venue because the mere fact that he may have been in Midland at some point in time does not establish that he ever had possession of the firearms while there. Bollinger's well-articulated argument is undercut by his own statements at the scene. On the videotape, he can be heard to say that the guns belonged to his dad and uncle and that he and his passenger "were bringing them back from Midland."

Bollinger's statement does not foreclose the possibility that he acquired possession of the firearms beyond Midland County, but the jury's decision is also supported by circumstantial evidence connecting Bollinger with the underlying theft. The house was not in disarray, and only a few select items were taken. This would indicate that the thief had some familiarity with Davis's house. Davis testified that he knew Bollinger. In 2003, he hired Bollinger to do some painting and light repair work at his house. Davis's guns were inside the house and Bollinger went inside the home. Davis testified that, besides Bollinger, only three other non-family members were in his house the year before

the burglary. One of these was Davis's legal assistant, Elizabeth Melson. Davis testified that Bollinger had dated Melson, that he thought Bollinger was abusing her, and that Bollinger might have perceived that a rivalry existed between them because of this.

The only things taken were the guns, a video camera (that had been on top of the gun case), cuff links, and a bedspread from the room where the gun cabinet was located. The serial numbers on the guns in Bollinger's trunk were the same as the serial numbers on the guns Davis reported stolen. The deputies can be heard on the videotape discussing a blanket in the backseat of Bollinger's car. The video shows one of the deputies removing that blanket during the search of Bollinger's vehicle. The quality of the video is not ideal, but the blanket looks very much like a comforter.

Circumstantial evidence also indicated that the guns had been stolen not long before Bollinger was stopped by the deputies. Bollinger was stopped shortly after midnight on January 24. When Davis returned home from Ruidoso later that day, a sliding glass door was open, and his dog was inside. Davis testified that it appeared that his dog had been inside the house for only a day or two because there was a bone that appeared to be relatively fresh and the dog had not damaged anything.

Finally, the jury was entitled to consider Bollinger's explanation for possession and the manner in which the firearms were being transported. Texas courts have held that recent and unexplained possession can support a conviction for theft. *See Hardesty v. State,* 656 S.W.2d 73, 76–77 (Tex. Crim.App.1983). If the defendant offers an explanation, the record must establish that this explanation is false or unreasonable. *Jackson v. State,* 12 S.W.3d 836, 839 (Tex.App.-Waco 2000, pet. ref'd).

Bollinger's statement at the scene that the guns belonged to his dad and uncle is clearly false. No evidence was offered to support this statement, nor was Davis's testimony that he owned the firearms ever rebutted. Furthermore, both Deputy Chavez and Deputy Matthew Wayne Routh noted that the firearms—some of which were clearly expensive—were simply stacked in the trunk without the use of gun cases or protective wrapping.

From this evidence, the jury could have reasonably determined that venue was proper in Midland because Bollinger was responsible for the theft of Davis's guns. Because venue requires proof only by a preponderance of the evidence, we express no opinion on whether Bollinger could have been convicted of theft.

Bollinger argues alternatively that venue cannot be established by his out-of-court statements alone. Bollinger relies upon the rule that the State cannot establish the *corpus delicti* of an offense solely by the defendant's out-of-court statements, but must establish the fact that the crime was committed by other evidence. *See Hanson v. State,* 781 S.W.2d 445, 446 (Tex. App.-Fort Worth 1989), *appeal abated,* 790 S.W.2d 646 (Tex.Crim.App.1990) (appeal abated because of the intervening death of the defendant).

In *Salazar v. State,* 86 S.W.3d 640, 644 (Tex.Crim.App.2002), the court held that the *corpus delicti* rule ensures that a person is not convicted of a crime that never occurred based solely upon their extrajudicial confession. The rule accomplishes this by requiring confirmation that a loss or injury has occurred and that it was caused by criminal action as opposed to accident. *Id.* The rule does not apply when a crime has actually occurred. *Id.* at 644–45. Neither is the rule intended as a

safeguard against involuntary confessions. *Id.* at 645 n. 16.

In this case, there was sufficient confirmation that a crime did in fact occur. The deputies both testified that they saw the eight weapons in the trunk of Bollinger's car. The videotape does not show the weapons but does record the deputies' statements immediately after the trunk was opened. The deputies testified to, and offered documentary evidence of, their submission of the weapons' serial numbers to the criminal database. The serial numbers they searched matched those provided by Davis to the police later that day. Finally, the State offered documentary evidence of Bollinger's prior felony conviction.

■■■■■■ We do not believe that the *corpus delicti* rule applies to venue because it is not an element of the offense. Bollinger concedes this but contends that venue is an element of the *corpus delicti* because it was an element of the crime as charged in the indictment and the State was required to prove venue by a preponderance of the evidence. Bollinger's premise is correct, but we do not believe that it mandates his conclusion. The *corpus delicti* rule does not require confirmation of every element alleged in the indictment or for which the State has the burden of proof. For example, the rule does not require confirmation that the defendant was responsible for the crime. *Id.* at 644. Nor does the rule require confirmation of the specific details of the confession. *Id.* The State has the burden of proof on identity; and generally, the indictment will specify the means and manner of the offense. Consequently, the mere fact that the State has the burden of proof on an issue or includes an allegation in an indictment is insufficient to trigger application of the rule.

But if we are mistaken, there was circumstantial evidence connecting Bollinger with the theft of the firearms. This evidence corroborates the fact that the crime occurred in Midland County. Bollinger's first and second issues are overruled.

### B. Should the Evidence Have Been Suppressed?

■■■ Bollinger argues that the search was unreasonable and illegal because it was conducted without his consent, probable cause, a search warrant, or an exception to the Fourth Amendment's warrant requirement. Bollinger filed three pretrial motions to suppress evidence and requested the suppression of any evidence obtained in connection with his detention. The record does not indicate that he ever obtained a ruling on any of these motions. The State argues that this issue has, therefore, been waived. We agree. The failure to obtain an adverse ruling on a motion to suppress fails to preserve error. *Dunavin v. State*, 611 S.W.2d 91, 97 (Tex.Crim.App. 1981). Bollinger's third issue is overruled.

### C. Was the State's Closing Argument Improper?

Bollinger contends that the prosecutor engaged in improper jury argument by implying that the jury had no role in determining the legality of any search, by implying that the trial court had previously determined the search was legal, by misstating the venue law and the venue facts, by implying that the jury had no role in determining venue, by telling the jury that not finding venue in Midland was tantamount to taking the easy way out through the use of a loophole, and by striking at him over the shoulder of his attorney.

■■■ The State does not attempt to justify any of the challenged arguments. Some are cause for concern, but as the State correctly notes, no error has been preserved. Bollinger did object to some portions of the State's closing argument, but he did not object to any of the chal-

lenged statements. The failure to do so waives any error. *Cockrell v. State,* 933 S.W.2d 73, 89 (Tex.Crim.App.1996). Bollinger's fourth issue is overruled.

### D. Was Bollinger Denied the Effective Assistance of Counsel?

Bollinger contends that he received ineffective assistance of counsel because his counsel failed to obtain a ruling on any of the pretrial motions to suppress, did not object to the admission of the evidence obtained during his detention, did not request a jury instruction pursuant to Tex. Code Crim. Proc. Ann. art. 38.23 (Vernon 2005),[2] and did not object to the State's improper jury argument. The State argues that the record is insufficient to support a conclusion of ineffective assistance, that the deputies had probable cause to search Bollinger's vehicle, and that there is evidence of consent.

#### 1. Standard of Review.

To determine whether Bollinger's counsel rendered ineffective assistance at trial, we must first determine whether Bollinger has shown that counsel's representation fell below an objective standard of reasonableness and, if so, then determine whether there is a reasonable probability that the result would have been different but for counsel's errors. *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). We must indulge a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance; and Bollinger must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy. *Tong v. State,* 25 S.W.3d 707, 712 (Tex.Crim.App.2000). "[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Strickland,* 466 U.S. at 690, 104 S.Ct. 2052. An allegation of ineffective assistance must be firmly founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness. *Thompson v. State,* 9 S.W.3d 808, 814 (Tex.Crim.App.1999). Under normal circumstances, the record on direct appeal will not be sufficient to show that counsel's representation was so deficient and so lacking as to overcome the presumption that counsel's representation was reasonable and professional. *Bone v. State,* 77 S.W.3d 828, 833 (Tex.Crim.App. 2002). Rarely will the record on direct appeal contain sufficient information to permit a reviewing court to fairly evaluate the merits of such a serious allegation. *Id.*

#### 2. The Motions to Suppress.

Bollinger contends that he urged his counsel to press for a suppression hearing, and he notes that his counsel filed an affidavit in support of one of the suppression motions. He concludes that there was no reason not to request a hearing on the suppression motions and, therefore, that his attorney was ineffective for not doing so. The State's principal response is that the record is insufficient to sustain an ineffective assistance complaint because there is at least a fact question on whether Bollinger consented to the search or whether the officers had probable cause to conduct their search.

We agree with the State that there is an unresolved fact question on the officers' probable cause and thus, on the basis of the record before us, cannot conclude that counsel was constitutionally ineffective for not seeking a hearing on the

---

**2.** Such an instruction would instruct the jury to disregard evidence that it determines was obtained illegally.

motions to suppress, for not objecting to the admission of any evidence from the search, and for not requesting a jury instruction pursuant to Article 38.23.

■ When the deputies learned that Bollinger's passenger had an outstanding warrant, they placed him under arrest. They were then authorized to conduct a search incident to an arrest of his person and the area in his immediate control. *Chimel v. California*, 395 U.S. 752, 762–63, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969). Because the passenger had been in Bollinger's vehicle, this search could extend to the vehicle's passenger compartment. *New York v. Belton*, 453 U.S. 454, 459–60, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981).

That search revealed the presence of drug paraphernalia. The deputies were then authorized to conduct a broader search. *See Carroll v. United States*, 267 U.S. 132, 156, 45 S.Ct. 280, 69 L.Ed. 543 (1925) (warrantless search of a vehicle by officer with probable cause to believe the vehicle contained contraband did not run afoul of the Fourth Amendment); *see also United States v. Ross*, 456 U.S. 798, 825, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982) (if probable cause exists to believe contraband is concealed in a lawfully stopped vehicle, officers are justified in conducting a probing search of compartments and containers within the vehicle whose contents are not in plain view and that may conceal the *object* of the search). This search led to the discovery of the firearms in the trunk and to the deputies' efforts to determine if they had been reported as stolen.

Whether the deputies' actions after discovering the paraphernalia were reasonable depends upon whether they were reasonably related in scope to the circumstances that justified their prior actions or whether they had probable cause. *See Davis v. State*, 947 S.W.2d 240, 242 (Tex.

Crim.App.1997). The record shows that, at the least, fact questions exist over whether the scope of the deputies' search was reasonable and whether the deputies had probable cause to believe that Bollinger was in possession of stolen firearms.

It is undisputed that Bollinger's vehicle was stopped for speeding, that the deputies properly arrested his passenger, and that they lawfully discovered the drug paraphernalia in the vehicle. We cannot say that as a matter of law it was unreasonable for the deputies to then look in the vehicle's trunk. When the trunk was opened, the deputies observed several weapons, some of which were obviously expensive, simply stacked in the trunk without the benefit of carrying cases or protective covering. This is some evidence that a crime has or was being committed. We cannot say that as a matter of law the deputies' decision to conduct a further investigation after seeing the weapons or the procedure they utilized was unreasonable. Because we cannot conclude as a matter of law that an unreasonable search or seizure took place, we cannot determine that Bollinger's trial counsel was constitutionally ineffective for not requesting a suppression hearing or for not objecting to any evidence developed by the deputies during their search.

*3. Closing Argument.*

■ Bollinger argues that his counsel was ineffective for not objecting to the State's closing argument. Bollinger's complaints primarily concern the prosecution's statements about the legality of the search, venue, and attacks against his counsel. Representative of the former is the following:

During the questioning, Mr. Sykes asked several times, I believe—and I know once, for sure, about did you get

consent to search? Huh-oh. Consent to search.

Was the search good?

You know who determines that? Judge Darr determines if the search is good or bad. Not this jury in this case. If we did that, we would have no consistency in how searches can be done. The Constitution protects us from illegal searches and seizures. And the Court determines whether or not a search and seizure was legal or not. That's not in issue here.

Bollinger argues that this misstates both the law and facts. First, Judge Darr did not rule on any of the motions to suppress and, therefore, had not determined that the search was proper. Second, because the legality of the search was in issue, the jury did have a responsibility to independently assess the deputies' actions. *See* Article 38.23.

With regard to venue, Bollinger complains about the following argument in which the prosecution, after pointing out the lower burden of proof for venue, said:

If you want to take the easy way out, and figure, well, it is just a loophole, and we don't think there is venue, then that's up to you. All right. I suggest to you that wouldn't be the proper thing to do. But you are the jury.

Bollinger also argues that related statements misstated the State's burden and misstated the venue facts. He concludes that this was harmful because it led to the jury either ignoring the venue issue or weighing it with substantially less significance than it otherwise would have.

Bollinger finally argues that the State improperly prejudiced him by attacking his counsel with statements such as:

Defense lawyers—not all of them, but on a whole, one thing you want to do, if there is a lot of evidence against your client, is try to lead you all twelve off the facts of what's on trial.

The State makes no direct response to Bollinger's contention that counsel should have objected to these arguments other than to characterize any potential objection as "frivolous." [3]

The decision to object to a particular argument almost always involves trial-strategy considerations. Bollinger's trial counsel did object three times during the State's closing argument. Counsel can be concerned that too many objections will alienate a jury or that an objection might draw unwanted attention to a particular issue. The Texas Court of Criminal Appeals has held that defense counsel should ordinarily be accorded an opportunity to explain their actions before being condemned as unprofessional and incompetent. *See Bone,* 77 S.W.3d at 836.

We cannot determine why counsel chose not to object to these additional statements with the record before us. In the absence of this information, we are required to assume a strategic motive if any can be imagined and can find counsel's performance deficient only if his conduct was so outrageous that no competent attorney would have engaged in it. *Andrews v. State,* 159 S.W.3d 98, 101 (Tex. Crim.App.2005). Because there are legitimate tactical reasons why counsel could have chosen to not make additional objections during closing argument, we cannot hold that counsel's conduct was so outrageous that no competent attorney would have engaged in it. *See Bone,* 77 S.W.3d at 833.

---

**3.** We note that, despite the fact that the State characterizes the potential objections to the prosecution's closing argument as "frivo- lous," it made no effort to justify even a single one of the challenged statements in response to Bollinger's fourth issue.

#### 4. Potential Remand.

■ During oral argument, Bollinger's counsel suggested that the case could be remanded to the trial court for an evidentiary hearing should we determine that the record is insufficient. Bollinger relies upon *Stogiera v. State*, 191 S.W.3d 194 (Tex.App.-San Antonio 2005, no pet.).[4] The State responds that we lack the authority to remand for supplementation of the record, relying upon *Berry v. State*, 995 S.W.2d 699, 702 (Tex.Crim.App.1999).

*Stogiera* is distinguishable. There, the defendant filed a motion for new trial and requested a hearing. The defendant's motion was supported by affidavit testimony and alleged that his trial counsel had provided constitutionally ineffective assistance of counsel. The trial court denied the motion without conducting a hearing. The San Antonio Court held that he was entitled to a hearing because his motion and accompanying affidavits raised matters not determinable from the record that could entitle him to relief. 191 S.W.3d at 199. The court abated the appeal and remanded the case to the trial court with instructions to conduct an evidentiary hearing on the motion for new trial. *Id.* at 200–01. In this case, no similar motion was filed.[5]

The Texas Court of Criminal Appeals has repeatedly held that intermediate courts do not have the authority to remand a case to develop a new record. *See, e.g., Solomon v. State*, 49 S.W.3d 356, 365 (Tex.Crim.App.2001); *see also Farris v. State*, 712 S.W.2d 512, 515–16 (Tex. Crim.App.1986) (appellate record cannot be supplemented with evidence not developed during the proceedings surrounding the defendant's trial; proper avenue for introducing evidence not contained in the trial record is a hearing pursuant to a motion for new trial or an application for writ of habeas corpus).

Because Bollinger's request essentially is for the purpose of developing new issues rather than to conduct an evidentiary hearing the trial court was required to provide, we do not have the authority to grant his request. Bollinger's fifth issue is overruled.

#### E. Were Bollinger's Rights to Due Process Violated by His Conviction and Subsequent Detention?

Bollinger argues that, when considering the totality of his arguments, his conviction reflects a substantial deviation from the standard of evidence necessary to convict. Because we have previously overruled his primary issues and he has not identified any additional reasons why reversible error still exists, Bollinger's sixth issue is overruled.

### V. Holding

The judgment of the trial court is affirmed.

**4.** The court abated the appeal and remanded the case to the trial court to conduct an evidentiary hearing. The opinion after remand is *Stogiera v. State*, No. 04–04–00675–CR, 2006 WL 3419778 (Tex.App.-San Antonio November 29, 2006, no pet.) (not designated for publication).

**5.** Bollinger did file a motion for new trial that included an affidavit from his trial counsel. That motion, however, did not raise ineffective assistance of counsel as an issue. The evidence attached to the motion concerned the admissibility of testimony offered during the punishment phase of the trial. This particular issue has not been carried forward on appeal.