**Opinion filed June 20, 2013**



In The

# Elebenth Court of Appeals

_____

## No. 11-12-00060-CR
_____

## FELIX VALENZUELA, Appellant

## V.

## THE STATE OF TEXAS, Appellee

**On Appeal from the 244th District Court**
**Ector County, Texas**
**Trial Court Cause No. C-38,736**

### M E M O R A N D U M   O P I N I O N

The jury convicted Felix Valenzuela, Appellant, of the offense of unlawful possession of a firearm by a felon, found the enhancement allegations to be true, and assessed punishment at confinement for thirty years. We modify and affirm as modified.

In his sole issue on appeal, Appellant challenges the sufficiency of the evidence. He asserts that the evidence is insufficient to show that he possessed the

firearm at 12849 Jasper, Odessa, Texas, a location at which he did not live, as alleged in the indictment. We review Appellant's challenge to the sufficiency of the evidence under the standard of review set forth in *Jackson v. Virginia*, 443 U.S. 307 (1979). *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010); *Polk v. State*, 337 S.W.3d 286, 288–89 (Tex. App.—Eastland 2010, pet. ref'd). Under the *Jackson* standard, we examine all of the evidence in the light most favorable to the verdict and determine whether, based on that evidence and any reasonable inferences from it, any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson*, 443 U.S. at 319; *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010). The jury, as the trier of fact, was the sole judge of the credibility of the witnesses and of the weight to be given to their testimony. TEX. CODE CRIM. PROC. ANN. art. 36.13 (West 2007), art. 38.04 (West 1979). As such, the jury was free to believe or disbelieve all or any part of any witness's testimony. *Sharp v. State*, 707 S.W.2d 611, 614 (Tex. Crim. App. 1986).

The record shows, and Appellant does not dispute, that Appellant was a convicted felon at the time of the charged offense and that more than five years had elapsed since his release from confinement. Thus, in January 2010, at the time of the charged offense, Appellant could not legally possess a firearm at any location other than the premises at which he lived. TEX. PENAL CODE ANN. § 46.04(a)(2) (West 2011). A person commits a possession offense if he voluntarily possesses the prohibited item. *Bollinger v. State*, 224 S.W.3d 768, 774 (Tex. App.—Eastland 2007, pet. ref'd) (citing TEX. PENAL CODE ANN. § 6.01(a) (West 2011)). "Possession is a voluntary act if the possessor knowingly obtains or receives the thing possessed or is aware of his control of the thing for a sufficient time to permit him to terminate his control." PENAL § 6.01(b). To prove possession, the State

must show: (1) that the accused exercised actual care, control, or custody over the firearm; (2) that he was conscious of his connection with it; and (3) that he possessed the firearm knowingly or intentionally. *Bollinger*, 224 S.W.3d at 773. The State does not have to prove that the accused had exclusive possession of the firearm; joint possession is sufficient to sustain a conviction. *Id.* at 774 (citing *Cude v. State*, 716 S.W.2d 46, 47 (Tex. Crim. App. 1986)).

Kadell Jude Ridley testified that he purchased a lever-action .22 magnum rifle from Appellant in December 2009 for $100. On January 9, 2010, Appellant and two friends, Victor Gonzales and Jesse Lerma Lopez Jr., came to Ridley's house, and Appellant told Ridley that he wanted the rifle back. Ridley went inside, retrieved the rifle, and offered to sell it back to Appellant for $100. According to Ridley, Appellant was "[d]runk and angry" and said, "[N]o, I want it." Ridley informed Appellant that the rifle belonged to Ridley and that, if Appellant wanted it back, he would have to pay for it. Appellant then "reached over and grabbed it and yanked it out of [Ridley's] hands." Ridley testified that Appellant then chambered a round and fired it into the driveway. Ridley backed away, and Appellant got in his car and left. Ridley testified that Lopez and Gonzales remained in the car and that an acquaintance, Adam Granado Chavarria, was in the driveway with Ridley.

Ridley called the police, and Deputy Richard Brewer was sent to Ridley's house. After Ridley told him what Appellant had done, Deputy Brewer left and located Appellant at 12849 Jasper Street. The trailer house at that address was not Appellant's home, but was the home of Lopez. When Deputy Brewer arrived at that location, he observed Appellant "by the back porch" and the rifle "leaning up against the handrail" near Appellant. Deputy Brewer testified that the porch was small, "maybe three by three," and had stairs off to one side. Appellant was not on

3

the porch; he "was standing off to the side of the porch by the east rail." The rifle was on the porch, but Appellant was standing "right beside" it. He "could have reached out and grabbed it." Lopez was inside the trailer house, and Gonzales was next to the vehicle. Deputy Brewer did not see Appellant hold or touch the rifle and did not know who put it on the porch. Deputy Brewer testified that he arrested Appellant because "[Appellant] was in control, possession of that firearm." Nobody else was near the rifle.

Lopez testified that he was driving Appellant's car on the evening of the incident and that Appellant and Gonzales were in the car when they saw Ridley walking down the street. They pulled up next to Ridley, and Appellant asked Ridley about some money that Ridley owed him. Ridley told Appellant to go to Ridley's house to get paid. When they arrived, Ridley and Chavarria came out of Ridley's house; Ridley was holding a rifle. Appellant walked up to Ridley, and Ridley pointed the rifle at Appellant. Lopez did not hear the conversation between Appellant and Ridley. Lopez testified that he got out of the car and then saw Appellant knock the rifle out of Ridley's hands. When Appellant hit the rifle, it fired and fell to the ground. Lopez testified that he walked over and picked the rifle up off the ground and that Appellant did not grab the rifle or otherwise exercise any kind of control over it. Lopez said he picked the rifle up because he was afraid Ridley might pick it up and start shooting at them. Lopez testified that he put the rifle in the backseat of the car, drove to his house, and put the rifle on his porch.

Appellant testified similarly to Lopez regarding the incident with Ridley and the events of that night. Appellant said that Ridley "was acting weird, hostile" toward Appellant, presumably because Ridley did not want to pay Appellant the $40 that Appellant said Ridley owed. According to Appellant, he "slapped" the

4

rifle when Ridley pointed it at him. The rifle fired, and Ridley dropped it. Appellant testified that he did not grab the rifle or pick it up off the ground and that the only time he touched the rifle was when he slapped it out of Ridley's hands.

Gonzales testified that he did not remember that night very well because he had been drinking and "was feeling pretty good." He said Appellant "took the gun away from" Ridley. Gonzales testified that Lopez did not get out of the car but that Appellant took the rifle from Ridley and handed it to Lopez in the car. Gonzales did not recall the rifle being in the backseat; he recalled it being in the front next to Lopez.

Chavarria testified at trial; however, because both Appellant and Ridley were friends of his, Chavarria did not testify willingly. Chavarria testified that the rifle had belonged to Appellant and that Ridley had purchased the rifle from Appellant. On the night of the incident at issue in this case, Appellant showed up at Ridley's house. Appellant, who looked intoxicated, told Ridley that he wanted the rifle back. Ridley was holding the rifle—but was not pointing it at anybody— when Appellant reached for it. As Appellant grabbed the rifle and jerked it away from Ridley, the rifle "misfire[d]"; Ridley had had his hand on the trigger. Appellant then said, "[T]his is how you shoot it," and he fired a shot into the ground. Appellant, Lopez, and Gonzales then left. Chavarria testified that he thought both Appellant and Lopez got out of the car; he was sure that Appellant got out but was not sure that Lopez got out of the car. Chavarria was not sure whether Lopez or Appellant took the rifle to the car.

Based upon the record in this case, we hold that a rational jury could have found that Appellant possessed the firearm as alleged in the indictment. In this case, some evidence showed that Appellant had owned the rifle, that he had sold it to Ridley, that he wanted it back, that he went to Ridley's house to retrieve it, that

5

he took it away from Ridley, and that he took it to his car and left with it. There was also evidence that the rifle was within Appellant's reach when Deputy Brewer observed Appellant and the rifle at 12849 Jasper and that nobody else was near the rifle. From this evidence, a jury could have reasonably inferred that Appellant exercised actual care, custody, control, or management over the rifle at 12849 Jasper. The jury was free to determine that the testimony of Lopez and Appellant was not credible and that Appellant had at least joint possession of the rifle. *See Sharp*, 707 S.W.2d at 614; *Bollinger*, 224 S.W.3d at 774.

Contrary to Appellant's assertion, evidence was also introduced to show that Appellant did not live at 12849 Jasper. Deputy Brewer testified that that was not Appellant's home. Lopez testified that the trailer house at that address belonged to him and that he lived there. Additionally, Appellant testified that he did not own any weapons or have any weapons at his residence because his wife does not allow guns at their house, and Appellant repeatedly referred to the residence at 12849 Jasper as "[Lopez's] house." Appellant's sole issue is overruled.

We note, however, that there are errors in the judgment that need to be corrected. The judgment erroneously reflects "N/A" with respect to the enhancement pleas and findings and also erroneously reflects that the offense is a "1ST DEGREE FELONY." The offense, however, is a third-degree felony pursuant to TEX. PENAL CODE ANN. § 46.04(e) (West 2011). Furthermore, the record shows that Appellant pleaded true to both enhancement allegations, that the jury found both enhancement allegations to be true, and that Appellant was punished as a habitual offender under TEX. PENAL CODE ANN. § 12.42(d) (West Supp. 2012).

We modify the judgment of the trial court to reflect that Appellant pleaded "TRUE" to the first and second enhancement paragraphs, that the jury found the

first and second enhancement paragraphs to be "TRUE," and that the degree of the offense committed by Appellant was a "3RD DEGREE FELONY." As modified, we affirm.

JIM R. WRIGHT

CHIEF JUSTICE

June 20, 2013

Do not publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Wright, C.J.,
McCall, J., and Willson, J.