**Opinion filed August 15, 2013**



In The

# Eleventh Court of Appeals

_____

## No. 11-11-00235-CR
_____

## DUSTIN EVAN RICE, Appellant

## V.

## THE STATE OF TEXAS, Appellee

**On Appeal from the 244th District Court**

**Ector County, Texas**

**Trial Court Cause No. C-37,751**

## M E M O R A N D U M   O P I N I O N

The jury convicted Dustin Evan Rice of the offense of unlawful possession of a firearm by a felon. Appellant pleaded true to an enhancement allegation. The jury found the enhancement allegation to be true and assessed Appellant's punishment at confinement for fifteen years and a fine of $2,500. We affirm.

*Issue on Appeal*

In his sole issue on appeal, Appellant challenges the sufficiency of the evidence. He asserts that the evidence is insufficient to show that he possessed the firearm.

*Sufficiency of the Evidence*

We review Appellant's challenge to the sufficiency of the evidence under the standard of review set forth in *Jackson v. Virginia*, 443 U.S. 307 (1979). *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010); *Polk v. State*, 337 S.W.3d 286, 288–89 (Tex. App.—Eastland 2010, pet. ref'd). Under the *Jackson* standard, we examine all of the evidence in the light most favorable to the verdict and determine whether, based on that evidence and any reasonable inferences from it, any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson*, 443 U.S. at 319; *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010). The jury, as the trier of fact, was the sole judge of the credibility of the witnesses and of the weight to be given to their testimony. TEX. CODE CRIM. PROC. ANN. art. 36.13 (West 2007), art. 38.04 (West 1979). As such, the jury was free to believe or disbelieve all or any part of any witness's testimony. *Sharp v. State*, 707 S.W.2d 611, 614 (Tex. Crim. App. 1986).

Section 46.04(a)(1) of the Penal Code provides that a person who has been convicted of a felony commits the offense of unlawful possession of a firearm if he possesses a firearm "after conviction and before the fifth anniversary of [his] release from confinement following conviction of the felony or [his] release from supervision under community supervision, parole or mandatory supervision, whichever date is later." TEX. PENAL CODE ANN. § 46.04(a)(1) (West 2011). The record shows, and Appellant does not dispute, that he was convicted of a felony offense in 2002 and that he was on parole for that offense at the time of the

charged offense in this case. Thus, the date of Appellant's alleged possession of the firearm fell within the five-year period contemplated in Section 46.04(a)(1).

A person commits a possession offense if he voluntarily possesses the prohibited item. *Bollinger v. State*, 224 S.W.3d 768, 774 (Tex. App.—Eastland 2007, pet ref'd) (citing TEX. PENAL CODE ANN. § 6.01(a) (West 2011)). "Possession is a voluntary act if the possessor knowingly obtains or receives the thing possessed or is aware of his control of the thing for a sufficient time to permit him to terminate his control." PENAL § 6.01(b). To prove possession, the State must show (1) that the accused exercised actual care, control, or custody over the firearm; (2) that he was conscious of his connection with it; and (3) that he possessed the firearm knowingly or intentionally. *Bollinger*, 224 S.W.3d at 773. The State does not have to prove that the accused had exclusive possession of the firearm; joint possession is sufficient to sustain a conviction. *Id.* at 774 (citing *Cude v. State*, 716 S.W.2d 46, 47 (Tex. Crim. App. 1986)).

If the firearm is not found on the defendant's person or is not in his exclusive possession, additional facts must link him to the firearm. *Evans v. State*, 202 S.W.3d 158, 161–62 (Tex. Crim. App. 2006); *Williams v. State*, 313 S.W.3d 393, 397 (Tex. App.—Houston [1st Dist.] 2009, pet ref'd); *Bollinger*, 224 S.W.3d at 774. The evidence must establish that the defendant's connection with the firearm was more than fortuitous. *Evans*, 202 S.W.3d at 161; *Williams*, 313 S.W.3d at 397–98. It is not the number of links that is dispositive but, rather, the logical force of all of the evidence, direct or circumstantial. *Evans*, 202 S.W.3d at 162; *Williams*, 313 S.W.3d at 398.

On June 22, 2010, Appellant attempted to enter Apartment No. 93 at the Arbor Point Apartments, but he could not get the key to the apartment to unlock the door. At that time, Appellant had lived in the apartment for about a month. He was not a party to the lease of the apartment. Appellant went to the office at the

apartment complex and spoke to Brittany Nicole Looney, the apartment manager. Appellant asked her why the key to Apartment No. 93 would not work. Looney told him that she had "locked out" Brandon Owens, the tenant of the apartment, because he had failed to pay rent. Ultimately, Looney let Appellant enter the apartment so that he could get his belongings. Ronnie Hoefer and DeWayne Winton arrived at the apartment. They had been staying at the apartment for a week or two. Hoefer and Winton moved their belongings out of the apartment and put them into Hoefer's pickup.

On the same date, Odessa police officers were conducting surveillance on Apartment No. 93 as part of an ongoing narcotics investigation. The officers learned that Appellant had an outstanding warrant for a parole violation. The officers contacted Appellant, Hoefer, and Winton as they carried a couch toward the pickup. During a search of the pickup, the officers found a black semiautomatic pistol and other items in the backseat of the pickup. The brand of the handgun was "Royal."

Appellant told Odessa Police Corporal Frederico Nayola that there was methamphetamine that belonged to Hoefer inside the apartment. Appellant told Corporal Nayola that he could show him the methamphetamine. Corporal Nayola and Appellant walked to the master bedroom. Appellant pointed to a Play Station game case that was on the bed. Appellant told Corporal Nayola that the methamphetamine could be in the case. In the game case, Corporal Nayola found three baggies that contained methamphetamine. Corporal Nayola found other items on the bed in the master bedroom, including a hygiene bag that contained hygiene products and a paper copy of Appellant's driver's license. Corporal Nayola also found a gun holster on top of a vanity counter that was in the master bedroom.

Corporal Nayola interviewed Appellant. The interview was recorded, and a copy of the recording was admitted into evidence. The recording was played for the jury. During the interview, Corporal Nayola asked Appellant about the gun that the officers found in the pickup. Appellant told Corporal Nayola that the gun belonged to Hoefer. Corporal Nayola asked Appellant whether Appellant's fingerprints were on the gun. In response, Appellant said that Hoefer had pointed the gun at him. Appellant also said that he had grabbed the gun and had taken it away from Hoefer. Appellant confirmed in the interview that he had shown the game case that contained the methamphetamine to Corporal Nayola.

Corporal Nayola explained during his testimony that the gun the officers found in the pickup was not a common size or type of gun. He said that the gun was an "off caliber pistol" and that it was "not a normal .9 millimeter or 40 or 45." He previously had not heard of the Royal brand of guns. Likewise, Corporal Luis Adame had not heard of the Royal brand of guns. Corporal Nayola and Corporal Adame testified that the holster Corporal Nayola found on the vanity counter in the master bedroom fit the gun the officers found in the pickup.

Appellant testified that he lived in Apartment No. 93 with Owens. Appellant said that, on June 22, 2010, he had lived in the apartment for about a month. He said that, at that time, Hoefer and Winton had been staying in the apartment for a week or two. Appellant testified that, during that time period, he, Hoefer, and Winton repeatedly used methamphetamine. Appellant said that he is a drug addict.

Appellant testified that he did not have any personal belongings in the master bedroom. He said that he had some items in another bedroom and in the closet in the front room. Appellant said that Owens stayed in the master bedroom but that Owens left the apartment "a couple of days before [they] were evicted."

On June 22, 2010, Appellant's key would not fit the lock on the door to the apartment. Appellant said that Looney let him into the apartment. Hoefer and Winton came to the apartment to get their belongings. Appellant testified that, at some point, he saw Hoefer "come up out of the pantry with a pistol." Appellant said that Hoefer "started coming at [him] with the gun." Appellant said that he grabbed the pistol and pushed Hoefer away. According to Appellant, Hoefer started laughing and told him that the gun was not loaded. Appellant said that he had not seen the gun before this occasion. He said that the gun belonged to Hoefer. Appellant said that he told Hoefer to get the gun out of the apartment. Appellant testified that Hoefer gave the gun to Winton and that Winton took the gun out of the apartment. When Winton came back to the apartment, he told Appellant that he had given the gun to "Ace." Appellant said that Ace occasionally came to the apartment.

Appellant testified that he did not know the gun was in the pickup when the officers searched it. Appellant said that he knew methamphetamine was in the apartment and that he pointed out the game case that contained the methamphetamine to Corporal Nayola. Appellant testified that he did not know the holster was in the master bedroom and that the holster did not belong to him. He said that the hygiene bag did not belong to him. Appellant said that Corporal Nayola showed him the paper copy of his driver's license that was found in the hygiene bag. Appellant testified that, earlier, he had lost the paper copy of his license in Hoefer's pickup.

Based on the record in this case, we hold that a rational jury could have found that Appellant possessed the firearm as alleged in the indictment. The State established a number of links between Appellant and the firearm. Appellant had been living in the apartment for a month. He knew that there was methamphetamine in the master bedroom. He pointed out the game case that

contained the methamphetamine to Corporal Nayola. The game case was on the bed in the master bedroom. The bag that contained the copy of Appellant's driver's license was on the same bed. Corporal Nayola found the gun holster in the master bedroom. The gun holster fit the handgun. Appellant told Corporal Nayola that he had seen the gun in the apartment when Hoefer pointed it at him. From this evidence, a jury could have reasonably inferred that Appellant exercised care, control, or custody over the firearm. The jury was free to determine that the testimony of Appellant was not credible and that he at least had joint possession of the handgun. *See Sharp*, 707 S.W.2d at 614. Appellant's sole issue is overruled.

*This Court's Ruling*

We affirm the judgment of the trial court.


TERRY McCALL

JUSTICE


August 15, 2013

Do not publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Wright, C.J.,
McCall, J., and Willson, J.

7