

# NUMBER 13-21-00192-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

JAMES CHARLES BAKER,                                             **Appellant,**

**v.**

THE STATE OF TEXAS,                                               **Appellee.**

## On appeal from the 156th District Court
## of Bee County, Texas.

# MEMORANDUM OPINION

**Before Justices Longoria, Hinojosa, and Silva**
**Memorandum Opinion by Justice Hinojosa**

Appellant James Charles Baker was convicted of unlawful possession of a firearm by a felon, a third-degree felony. *See* TEX. PENAL CODE ANN. § 46.04. By one issue, Baker contends the evidence was legally insufficient to prove that he knowingly possessed a firearm in violation of the felon in possession statute. *See id.* We affirm.

## I.  BACKGROUND

A Bee County grand jury indicted Baker on June 16, 2020, for felony possession of a firearm, enhanced by Baker's habitual felony offender status. *See id.* Trial began on May 20, 2021. Joshua Everett, a Texas Department of Public Safety peace officer, testified that he was field training with senior trooper Jarrad Williams when he initiated a traffic stop on Baker on May 21, 2019. The stop was for a defective license plate lamp. After Baker pulled his vehicle into a Dollar General parking lot and parked, Everett approached the driver's side window. Everett informed Baker of the reason for the stop, obtained Baker's driver's license, and asked him to step out of the vehicle. Baker confirmed to Everett that he owned the vehicle, a four-door truck. Everett then noticed that the windows were rolled down in the truck, and he saw a rifle in the back seat. He asked Baker whether the firearm was a .22 rifle. Baker responded that it was a .30-06 caliber rifle that he found while working on a job site digging a ditch. Everett testified that the firearm was "a Springfield Arms, Model 1903" that was used during World War II "to shoot and kill people." It was dirty and rusty.

After Everett ran a background check and learned that Baker was a convicted felon, he returned to Baker's truck with Williams to arrest Baker for unlawful possession of a firearm by a felon. *See id.* Baker "became angry and began cussing" at the officers. On the ride to the police station, Baker explained that "he found the gun while he was digging a water line and that he, with the permission of the homeowner where he was digging the water line, [was] taking it home to restore it and then sell it." According to Baker, the firearm was buried approximately one foot below the ground. Baker believed

2

the firearm would be worth $1,500 after it was properly restored.

Williams, during his testimony, clarified that the rifle was on the back floorboard area, not on the backseat. He confirmed that he and Everett learned during the background check that Baker began parole for his 2014 felony possession of a firearm charge in 2017; accordingly, their traffic stop in 2019 was still within the five-year prohibition period for Baker to possess a firearm.

Daniel Caddell, an investigator with the Live Oak County Sheriff's Department, testified as an expert witness in fingerprint identification. He verified Baker's previous 2014 unlawful possession of a firearm by a felon conviction by analyzing Baker's fingerprints.

The jury convicted Baker of unlawful possession of a firearm by a felon. *See id.* After he pleaded true to two enhancements[1], the trial court sentenced Baker to thirty years' incarceration in the Texas Department of Criminal Justice—Correctional Institutions Division. Baker appeals.

## II.    STANDARD OF REVIEW & APPLICABLE LAW

In reviewing the sufficiency of the evidence to support a conviction, we consider the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Stahmann v. State*, 602 S.W.3d 573, 577 (Tex. Crim. App. 2020) (citing *Jackson*

---

[1] Baker pleaded true to the September 19, 2006 conviction of felony driving while intoxicated in Cause No. 06-05-11906 in the 79th District Court of Jim Wells County, and to the May 26, 2009 conviction of felony driving while intoxicated in Cause No. 96-CRF-539, from the 105th District Court of Kleberg County.

*v. Virginia*, 443 U.S. 307, 319 (1979)).

We consider both direct and circumstantial evidence as well as all reasonable inferences that may be drawn from the evidence. *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). Circumstantial evidence is as probative as direct evidence in establishing guilt, and circumstantial evidence alone can be sufficient to establish guilt. *Nisbett v. State*, 552 S.W.3d 244, 262 (Tex. Crim. App. 2018); *Temple v. State*, 390 S.W.3d 341, 359 (Tex. Crim. App. 2013). "Each fact need not point directly and independently to the guilt of a defendant, as long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction." *Walker v. State*, 594 S.W.3d 330, 335 (Tex. Crim. App. 2020) (citing *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007)). We resolve any evidentiary inconsistencies in favor of the verdict, keeping in mind that the jury is the exclusive judge of the facts, the credibility of the witnesses, and the weight to give their testimony. *Walker*, 594 S.W.3d at 335; *see* TEX. CODE CRIM. PROC. ANN. art. 38.04.

Sufficiency of the evidence is measured by the elements of the offense as defined by a hypothetically correct jury charge. *Metcalf v. State*, 597 S.W.3d 847, 856 (Tex. Crim. App. 2020) (citing *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997)). "The hypothetically correct jury charge accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Walker*, 594 S.W.3d at 336.

4

The elements of a felon in possession of a firearm offense are met when: (1) a person; (2) who has been convicted of a felony; (3) possesses a firearm; (4) after conviction "and before the fifth anniversary of the person's release from confinement following conviction of the felony or the person's release from supervision under community supervision, parole, or mandatory supervision, whichever date is later." *See* TEXAS PENAL CODE ANN. § 46.04(a). In these cases, the State must prove: "(1) that the accused exercised actual care, control, or custody of the firearm; (2) that he was conscious of his connection with it; and (3) that he possessed the firearm knowingly or intentionally." *Bollinger v. State*, 224 S.W.3d 768, 773 (Tex. App.—Eastland 2007, pet. ref'd).

### III. ANALYSIS

By his sole issue, Baker contends that the evidence was insufficient to establish that he knowingly possessed a firearm in violation of the felon in possession statute. *See* TEXAS PENAL CODE ANN. § 46.04(a). He claims that his possession of this firearm was fortuitous because it "appeared inoperable and there was no ammunition for the rifle." He further argues that he did not possess the firearm to "use it for its intended purpose as this rifle was a relic of the past and there was no evidence that it was even functional."

The Texas Penal Code provides an exception for certain historical firearms under this statute. *See id.* § 46.01(3). The statute sets forth that "an antique or curio firearm manufactured before 1899" or "a replica of an antique or curio firearm manufactured before 1899, but only if the replica does not use rim fire or center fire ammunition" do not meet the definition of "firearm" in this context. *See id*. Here, the evidence presented does

5

not show that the firearm at issue fell within this exception. Although we do not have evidence regarding when the rifle was manufactured, Everett's testimony established that the "Springfield Arms, Model 1903" was a rifle used during World War II—an event that occurred over forty years after 1899. *See id*.

Additionally, Texas law is clear that it is not necessary for a firearm to be operable at the time of arrest for the felon in possession offense. *See Bollinger*, 224 S.W.3d at 775–76; *Lewis v. State,* 852 S.W.2d 667, 669 (Tex. App.—Houston [14th Dist.] 1993, no pet.) (concluding that the State was not required to prove that a short-barrel firearm was in working condition). Although the evidence shows that the rifle was dirty and rusted from apparently being buried underground, the State only had to prove that Baker exercised actual care, control, or custody of the firearm; that he was conscious of his connection with it; and that he possessed it knowingly or intentionally. *See Bollinger*, 224 S.W.3d at 773.

Here, Baker does not dispute possession. The record established that Baker discovered the firearm while digging a ditch. According to Baker, he asked the landowner for permission to take the firearm home to refurbish it in the hopes of collecting $1,500. The rifle was found on the back floorboard area of a vehicle he owned and was operating. Baker's parole for his most recent felony began in 2017, and he was arrested for possession of a firearm in 2019—well within the five-year prohibition time for him to possess a weapon. *See* TEXAS PENAL CODE ANN. § 46.04(a). Considering the evidence in the light most favorable to the verdict, we conclude that a rational trier of fact could have found the essential elements of this crime beyond a reasonable doubt. *See Stahmann*,

6

602 S.W.3d at 577; *Jackson*, 443 U.S at 319.

## IV.    CONCLUSION

We affirm the trial court's judgment.

LETICIA HINOJOSA
Justice

Do not publish.
TEX. R. APP. P. 47.2 (b).

Delivered and filed on the
14th day of April, 2022.