Affirmed in
Part and Reversed and Remanded in Part and Majority and Dissenting Opinions
filed August 31, 2010.

 

 

In
The

Fourteenth
Court of Appeals



NO.  14-09-00319-CR



Jose Armando
DeLeon, Appellant 

v.

The State of
Texas, Appellee 



On Appeal from
the 272nd District Court

Brazos County, Texas

Trial Court
Cause No.  07-02731-CRF-272



 

DISSENTING OPINION 

            I agree that appellant’s defense counsel
did not render ineffective assistance during the guilt/innocence phase of trial,
but I differ from the majority in that I would hold that appellant also did not
receive ineffective assistance of counsel during the punishment phase of
trial.  I therefore respectfully dissent.  

 

I.  Standard of Review

            We review claims of ineffective
assistance of counsel under the standard set forth in Strickland v.
Washington, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). Under
the Strickland test, an appellant must prove that his trial counsel’s
representation was deficient and the deficient performance was so serious that
it deprived the appellant of a fair trial.  Id. at 687, 104 S. Ct. at
2064.  To establish both prongs, the appellant must prove by a preponderance of
the evidence that counsel’s representation fell below the objective standard of
prevailing professional norms, and there is a reasonable probability that, but
for counsel’s deficiency, the result of the proceeding would have been
different.  Id. at 690–94, 104 S. Ct. at 2066–68.  This test is applied
to claims arising under the Texas Constitution as well as those arising under
the United States Constitution. Hernandez v. State, 726 S.W.2d 53, 56-57
(Tex. Crim. App. 1986) (en banc).  An appellant’s failure to satisfy one prong
makes it unnecessary for a court to consider the other prong.  Strickland,
466 U.S. at 697, 104 S. Ct. at 2069.  

            Our review of defense counsel’s
performance is highly deferential, beginning with the strong presumption that
the attorney’s actions were reasonably professional and were motivated by sound
trial strategy.  Jackson v. State, 877 S.W.2d 768, 771 (Tex. Crim. App. 1994)
(en banc).  When the record is silent as to trial counsel’s strategy, we will
not conclude that the appellant received ineffective assistance unless the
challenged conduct was “‘so outrageous that no competent attorney would have
engaged in it.’”  Goodspeed v. State, 187 S.W.3d 390, 392 (Tex. Crim. App.
2005) (quoting Garcia v. State, 57 S.W.3d 436, 440 (Tex. Crim. App. 2001)). 
Usually, however, the lack of a clear record prevents the appellant from
meeting the first part of the Strickland test because the reasonableness
of counsel’s choices and motivations during trial can be proven deficient only
through facts that do not normally appear in the appellate record.  Mata v.
State, 226 S.W.3d 425, 430 (Tex. Crim. App. 2007).

            A sound trial strategy may be imperfectly
executed, but the right to effective assistance of counsel does not entitle a
defendant to errorless or perfect counsel.  See Robertson v. State, 187
S.W.3d 475, 483 (Tex. Crim. App. 2006).  “[I]solated instances in the record
reflecting errors of omission or commission do not render counsel’s performance
ineffective, nor can ineffective assistance of counsel be established by
isolating one portion of trial counsel’s performance for examination.”  McFarland
v. State, 845 S.W.2d 824, 843 (Tex. Crim. App. 1992), overruled on other
grounds by Bingham v. State, 915 S.W.2d 9 (Tex. Crim. App. 1994) (en
banc).  Moreover, “[i]t is not sufficient that the appellant show, with the
benefit of hindsight, that his counsel’s actions or omissions during trial were
merely of questionable competence.”  Mata, 226 S.W.3d at 430.  Rather,
to establish that trial counsel’s acts or omissions were outside the range of
professional competent assistance, a defendant must show that counsel’s errors
were so serious that he was not functioning as counsel.  Patrick v. State,
906 S.W.2d 481, 495 (Tex. Crim. App. 1995) (en banc).  

II.        Probation Officer Charles Russ

            With regard to Charles Russ, the
probation officer who testified during the punishment phase of trial, appellant
contends that his trial attorney rendered ineffective assistance, first, by
calling Russ as a witness at all, and second, by failing to object to Russ’s
testimony in specific areas.  The majority agrees with both of these arguments,
and finds that defense counsel’s conduct undermined confidence in the jury’s
assessment of punishment.  Thus, the majority reverses the sentence and remands
for a new punishment hearing without reaching appellant’s argument that defense
counsel rendered ineffective assistance during the punishment phase of trial by
introducing evidence that although appellant is a citizen of Mexico, he is a
legal resident of the United States.

            I respectfully disagree with the
majority’s conclusions concerning defense counsel’s effectiveness in calling
Russ as a witness, in failing to object to certain testimony, and in finding
this conduct prejudicial to appellant.  I therefore would reach appellant’s
remaining arguments, but based on this record, I would conclude that neither
prong of the Strickland test has been satisfied.  

A.        Calling Probation Officer as a Witness

            The majority holds that, notwithstanding
the presumption that defense counsel’s decision to call Russ as a witness was
motivated by sound trial strategy, no competent attorney would have called a
probation officer as a witness during the punishment phase of trial.  Thus, the
majority appears to hold that a defense attorney who calls a probation officer
as a witness during the punishment phase of trial delivers ineffective
assistance as a matter of law.  I respectfully disagree that such conduct falls
below an objective standard of reasonable representation as a matter of law or
on the facts presented here.

            Appellant has not offered and I have not
found any authority supporting the majority’s conclusion that no competent
attorney would call a probation officer as a witness during the punishment
phase of trial.  To the contrary, the Court of Criminal Appeals has expressly
stated that a defendant may call a probation officer during the punishment
phase of trial to help establish the defendant’s suitability for community
supervision.  See Ellison v. State, 201 S.W.3d 714, 723 (Tex. Crim. App.
2006).  I further disagree with the majority’s reading of Mares v. State,
52 S.W.3d 886 (Tex. App.—San Antonio 2001, pet. ref’d).  See ante, at
13, 15.  In holding that the defendant in that case received ineffective assistance
of counsel, the Mares court did not base its holding on defense
counsel’s conduct in calling a probation officer to testify or even on counsel’s
failure to object to testimony that was simply adverse; rather, the Mares court
held that where the sole objective of a punishment hearing was to obtain
probation, counsel rendered ineffective assistance by failing to object to an unqualified
witness’s expert opinion that she would not recommend probation for a person with
the defendant’s criminal record.  Mares, 52 S.W.3d at 893.  The
probation officer in this case was not asked if he would recommend appellant
for probation, and he volunteered no such opinion; thus, Mares does not
apply to the facts presented in this case.  

            Here, defense counsel relied on Russ’s
testimony in arguing that the surest way for the jury to protect the community
was to recommend probation because a sexual offender on probation is required
to successfully complete a treatment program.  As defense counsel stated in the
opening argument of the punishment phase, “The probation officer is going to
come in. . . .  He is going to tell you what probation consists
of.  He’s going to tell you-all the conditions and the various punishments; the
fact that sex offenders are required to register as a sex offender.”  Russ then
testified that counseling was a condition of probation, and that probationers
are required to submit to polygraph exams and unscheduled home visits to police
their compliance with conditions imposed for the protection of the community.  He
further explained that it can take several years to complete counseling, and a
probationer who has difficulty reading and writing will require a longer period
of counseling to complete the program.  Although Russ stated that parolees also
are required to attend counseling, he explained that this requirement ends when
the period of parole is over, even if the treatment program has not been
completed.  Moreover, he testified that counseling for imprisoned sex offenders
may be available for some of those who volunteer for treatment, but prisoners
fear that they will be harmed by other inmates if they are identified as sex
offenders.  

            Defense counsel properly may call a
probation officer to offer evidence of the conditions of probation, as was done
here.  See McBean v. State, 167 S.W.3d 334, 340 (Tex. App.—Amarillo
2004, pet. ref’d) (defense counsel did not render ineffective assistance by
offering testimony of probation officer regarding conditions of probation and
success of sexual offenders on probation, even though the officer further
testified without objection that most successful probationers “pled guilty and
took responsibility initially”).  On this record, I therefore would “conclude
that there were legitimate and professionally sound reasons for counsel’s
conduct” in calling Russ as a witness.  See Bone v. State, 77 S.W.3d
828, 836 (Tex. Crim. App. 2002).  Thus, I would hold that the record does not
support the claim that defense counsel rendered ineffective assistance simply
by calling a probation officer as a witness.  

B.        Failure to Object to Testimony Regarding Rehabilitation of
Sexual Offenders

            Appellant
additionally argues that he received ineffective assistance in the punishment
phase of trial because defense counsel failed to object to Russ’s testimony
emphatically denying that sexual offenders are “ever rehabilitated to the point
where the risk is gone.”  According to appellant, defense counsel should have
objected on the grounds that (a) the witness was not qualified to offer such
testimony, (b) “the subject matter . . . was
unreliable and did not assist the trier of fact,”[1] and
(c) the testimony was unfairly prejudicial.  The majority finds this
testimony not only unfairly prejudicial, but also highly inflammatory, and concludes
that even if Russ were qualified to offer such opinion testimony, defense
counsel’s conduct in failing to object to it fell below professional
standards.  In contrast, I would hold that defense counsel’s decision to
refrain from objecting was reasonable, even if Russ were not qualified to offer
such opinion testimony or the evidence was otherwise unreliable.[2]  

            The decision to refrain from objecting
must be evaluated in light of the information available at the time.  Ex
parte Carillo, 687 S.W.2d 320, 324 (Tex. Crim. App. 1985).  Defense counsel
is not required to make every sustainable objection, and the concern that “overobjecting”
can alienate a jury has been recognized as valid.  See Bollinger v. State,
224 S.W.3d 768, 781 (Tex. App.—Eastland 2007, pet. ref’d) (“Counsel can be
concerned that too many objections will alienate a jury or that an objection
might draw unwanted attention to a particular issue.”).  Moreover, a trial
attorney “may strategically decide to allow the other side to introduce
otherwise inadmissible evidence because it simply does not hurt the client’s
case or, in fact, may help it.”  McKinny v. State, 76 S.W.3d 463, 473
(Tex. App.—Houston [1st Dist.] 2002, no pet.).  “If a lawyer is reasonably sure
certain evidence will not hurt his client’s case, ‘it is usually better not to
object.’”  Id. (quoting Thomas A.
Mauet, Trial Techniques, 248–49 (5th ed. 2000)).  Finally, we must “‘assume
a strategic motivation if any can possibly be imagined.’”  Garcia v.
State, 57 S.W.3d 436, 440 (Tex. Crim. App. 2001) (quoting 3 Wayne R. LaFave, et al., Criminal Procedure
§ 11.10(c) (2d ed. 1999)) (emphasis added); see also Ex parte Ellis,
233 S.W.3d 324, 331 (Tex. Crim. App. 2007) (“Although the defensive course
chosen by counsel was risky, and perhaps highly undesirable to most criminal
defense attorneys, we cannot say that no reasonable trial attorney would pursue
such a strategy under the facts of this case.”).  

            In this case, however, a reasonable strategy
is not only imaginable but forcefully suggested by defense counsel’s closing
argument.  Russ had testified that one who commits a sexual offense against a
child can never be rehabilitated to the point that he no longer has
inappropriate sexual thoughts, but such a person can learn skills to help him
refrain from inappropriate behavior.  In closing argument, defense counsel turned
this testimony to appellant’s advantage by arguing that because appellant would
continue to have inappropriate thoughts after serving any prison term that
might be imposed, the only way to protect society was to ensure that appellant
received sufficient treatment to acquire the skills necessary to prevent those
thoughts from becoming behaviors.  

            [P]rison isn’t going to help society.  It isn’t
going to help Jose Deleon be a better man or a better part of our society.  

            The evidence you heard from Charlie Russ today
was that the type of counseling available in prison is inadequate; it’s first
come, first served.

            It doesn’t help if you’re trying to treat
somebody who is a sex offender to do it in a place where they can’t possibly be
around any children.  It does no good.  

            It is likely that most people who go to prison
at some time emerge from prison.  I would submit to you that a man who can’t
read and write and who’s had trouble with English as Mr. Deleon has for 30
years being in this country, with Mr. Deleon it is going to take him more than
the three or four years to work through his counseling that it would take an
educated person.  It is going to take him a while.  But that is what will
benefit society the most.  

            You heard Charlie Russ say when people do these
things, they have deviant desires deep in their mind.  They have thoughts that
hopefully the rest of us don’t have, and will always have them.  

            And Mr. Deleon is not an educated man, but
there is education available.  Mr. Russ can provide that.  Dr. Roy Luepnitz can
provide that.[[3]]
 You heard about that during Mr. Russ’[s] testimony.  This type of education is
necessary for people who have these type[s] of problems to make sure it doesn’t
happen again.  

            So I would argue to you that based on all of
these things that I have discussed -- in addition to the fact that what is best
for society in this case is to make sure there are not problems down the road
-- is a strenuous probation with counseling, with the polygraph testing you
have heard about.  . . .

            Based on these things I talked to you about
today, the life Mr. Deleon has lived with the exception of this incident, the
help that he needs to make sure that this doesn’t become a problem in the future
and that nobody else is harmed, I would argue to you that probation is the best
solution in this case for you-all.

            I disagree with the majority’s conclusion
that by choosing to use Russ’s testimony to appellant’s advantage rather than
simply objecting to it, defense counsel’s conduct was so outrageous that no
competent attorney would have engaged in it.  See Ellis, 233 S.W.3d at
336 (in evaluating whether counsel may have acted pursuit to a sound trial
strategy, “[w]e cannot ignore the fact that counsel’s tactics could have
achieved the desired result”) (emphasis added).  I instead would hold that
defense counsel’s conduct fell within objective professional standards.

C.        Failure to Object to Testimony That Appellant Became an “Illegal
Alien” Upon Conviction

            Appellant also
contends he received ineffective assistance because defense counsel allegedly allowed
Russ to testify that “if convicted, appellant would immediately become an
illegal alien.”  According to appellant, such testimony was excludable “because
the opinion was incorrect.”  

            Appellant’s argument is not supported by
citation to the record[4]
or to relevant authority.[5] 
I therefore would hold that this argument is waived.  See Tex. R. App. P. 38.1(i).[6]    

D.        Absence of Prejudice

            Because I would conclude that defense
counsel’s conduct fell within professional standards, I would not reach the
question of prejudice.  See Strickland, 466 U.S. at 697, 104 S.
Ct. at 2069.  I nevertheless address it here to explain my disagreement with
the standard of review as applied by the majority. 

            Under the Sixth Amendment, a criminal
defendant has the right, first, to actual representation by counsel, and
second, to effective assistance from such counsel.  Thus, claims of ineffective
assistance of counsel may be considered to be of two corresponding types: those
in which counsel, in effect, does not act as the defendant’s representative or
is prevented from doing so, and those in which counsel represents the
defendant, but fails to do so in a professionally competent manner.  The Fifth
Circuit has frequently referred to this as the distinction between “no defense
at all” and “shoddy representation.”  See, e.g., Gochicoa v. Johnson,
238 F.3d 278, 284 (5th Cir. 2000); Jackson v. Johnson, 150 F.3d 520, 525
(5th Cir. 1998); Childress v. Johnson, 103 F.3d 1221 (5th Cir. 1997).  In
Strickland, the latter are referred to as claims of “actual
ineffectiveness.”  Strickland, 466 U.S. at 686, 104 S. Ct. at 2064.  The
distinction is an important one, because the type of constitutional violation
alleged determines whether prejudice is presumed or must be shown. 

            If the first or “representation” right
has been violated, then prejudice is presumed, and the defendant is entitled to
have the judgment set aside.  “[S]uch circumstances involve impairments of the
Sixth Amendment right that are easy to identify and, for that reason and because
the prosecution is directly responsible, easy for the government to prevent.”  Id.
at 692, 104 S. Ct. at 2067.  Violations resulting in presumed prejudice
occur when (a) the defendant was actually denied the assistance of counsel at a
critical stage in the proceedings,[7]
(b) defense counsel “entirely failed to subject the prosecution’s case to
meaningful adversarial testing” such that the defendant was constructively
denied the assistance of counsel altogether,[8]
or (c) the State engages in various kinds of interference with counsel’s
assistance.[9] 
Id. at 692, 104 S. Ct. at 2067; Johnson v. State, 169 S.W.3d 223,
228–29 (Tex. Crim. App. 2005).  On the other hand, if the second right
allegedly has been violated, i.e., if the defendant’s claim is based on “actual
ineffectiveness,” then the defendant must “affirmatively prove prejudice”
before a reviewing court will set aside the judgment.  Strickland, 466
U.S. at 693, 104 S. Ct. at 2067.[10] 
This is true even if multiple errors permeate the proceedings.  See Aldrich
v. State, 296 S.W.3d 225, 233–259 (Tex. App.—Fort Worth 2009, pet. ref’d)
(op. on reh’g en banc).  

            Here, appellant alleges “actual
ineffectiveness,” and thus, must affirmatively prove prejudice.  The majority
opines that “it is difficult to assess exactly what impact the testimony had on
the jury,”[11]
but nevertheless holds that appellant was prejudiced by defense counsel’s
conduct in calling Russ as a witness and in failing to object to his testimony
regarding the rehabilitation of sexual offenders.  This conclusion appears to
be based primarily on (a) the number of pages used to transcribe Russ’s
testimony relative to the overall length of the punishment-phase transcript,
and (b) the jury’s failure to recommend probation as appellant requested.[12]  This
seems to me an insufficient basis on which to conclude that appellant has made
the requisite showing of prejudice, not least because this approach ignores all
of the remaining evidence.

            As I read the record, there was no
reasonable probability that the jury would have reached a different outcome
absent Russ’s testimony, because unfortunately, appellant’s friends and family
made it abundantly clear that if appellant received probation, they would
continue to allow him access to young girls.  All of appellant’s friends and
family who testified at the punishment phase of trial expressed disbelief that appellant
committed the offense, and even though a condition of probation would be that appellant
avoid contact with children, two witnesses testified that they would have no
problem in continuing to allow appellant to have contact with the young girls in
their families.  One of these witnesses lives across the street from appellant
and has a three-year-old daughter.  The third witness, appellant’s wife,
testified that appellant still maintained his innocence, and although she was
sure she could promise the jury that she would not leave him alone around
children ever again, she undermined that testimony by agreeing that she was
equally sure that appellant had not been alone with the complainant.  She also
demonstrated unreliability in accounting for her husband’s whereabouts.[13]  Finally,
it is undisputed that three of appellant’s grandchildren—including an infant
girl—continued to live with him.

            In sum, there was abundant evidence that instead
of supporting his efforts to comply with the conditions of probation,
appellant’s friends and family would continue to allow him access to young
girls.  On this record, I would find no reasonable probability that the outcome
of the punishment phase of trial would have been more favorable to appellant if
his attorney had not called Russ as a witness.

III.  National Origin

            Defense counsel offered evidence during
the punishment phase of trial that although appellant is a Mexican citizen, he has
been a legal resident of this country since 1985 and would have become an
American citizen, but he could not pass the citizenship test because he speaks
only Spanish and cannot read and write.  Defense counsel referred to this
evidence in the opening and closing arguments of the punishment phase of trial,
and appellant contends that remarks “that implicated appellant’s ethnic,
national, and immigration characteristics are strictly prohibited and
inadmissible as irrelevant, outside the record, and prejudicial.”[14]  

            Contrary to appellant’s argument, such
evidence is neither inadmissible per se nor inherently prejudicial, and none of
the cases cited by appellant support such a holding.[15]  Offering
such evidence can form part of a valid trial strategy, and many reasons for
choosing to offer such evidence can be imagined.  For example, evidence that
appellant became a legal resident decades ago supports defense counsel’s arguments
in favor of probation by showing that appellant is capable of self-policing and
has voluntarily and successfully done so in the past.  Appellant has a Hispanic
name and the jurors saw that the trial was being translated into Spanish for
the appellant.  Defense counsel may have been concerned that the jurors may
have thought that appellant was an illegal alien.  The fact that appellant was
a legal resident was a positive fact for the appellant.  Counsel may also have
chosen to use evidence of appellant’s long legal residency to demonstrate his
strong roots in the community and to undermine arguments or inferences that
appellant would ignore registration requirements, violate the conditions of
probation, or avoid supervision by returning to his home country.  I therefore
would hold that defense counsel’s conduct fell within objective norms of
professional representation.

Conclusion

            Although defense counsel has had no
opportunity to reply to appellant’s allegations of ineffective assistance, it
is possible to imagine reasonable trial strategies for the challenged conduct. 
Moreover, on this record, I would conclude that there is no reasonable
probability that the outcome of the punishment phase of trial would have been
different if none of the challenged conduct had occurred.  The absence of a
deficient performance by defense counsel and the absence of prejudice afford
independent grounds for affirming the trial court’s judgment; thus, for each of
these reasons, I respectfully dissent.  

                                                                                    

                                                                        /s/        Tracy
Christopher

                                                                                    Justice

 

 

 

Panel
consists of Chief Justice Hedges and Justices Anderson and Christopher. (CJ
Hedges majority.

Publish
— Tex.  R.  App.  P.  47.2(b).









[1]
Based on the authorities cited, appellant appears to assume for the purpose of
this “reliability” argument that Russ is an expert in the rehabilitation of
sexual offenders.  See, e.g., Mata v. State, 46 S.W.3d 902, 908–09
(Tex. Crim. App. 2001) (“Evidence Rule 702 provides that an expert witness may
testify as to his opinion based on scientific knowledge . . . .
 A trial court’s responsibility under Rule 702 is to determine whether
proffered scientific evidence is sufficiently reliable and relevant to assist
the jury.”); Nenno v. State, 970 S.W.2d 549, 561 (Tex. Crim. App. l998)
(discussing the standard for evaluating scientific evidence), overruled on
other grounds by State v. Terrazas, 4 S.W.3d 720 (Tex. Crim. App. 1999) (en
banc); Kelly v. State, 824 S.W.2d 568, 573 (Tex. Crim. App. 1992) (en
banc) (addressing proof of reliability of novel scientific evidence).  Because
neither the majority’s analysis nor my own is affected by accepting or
rejecting this assumption, it is unnecessary to address this argument further. 






[2]
The majority concludes that there has been no showing as to whether or not Russ
was qualified to offer an expert opinion on the subject.  Ante, at 13. 
But if the record were silent on this matter, then under the governing standard
of review, I would presume that defense counsel’s failure to object was based
on sound trial strategy.  Absent a contrary showing in the record, I would
presume that defense counsel had investigated Russ’s qualifications before calling
him as a witness, was satisfied with Russ’s qualifications to offer an expert
opinion on the rehabilitation of sex offenders, and reasonably believed that
the trial court would not abuse its discretion by overruling an objection based
on Russ’s qualifications.  See Bone, 77 S.W.3d at 834–35 & n.21.  I
do not believe the record is silent, however.  Instead, I read the record as
affirmatively demonstrating that Russ was not qualified to offer an expert
opinion on the rehabilitation of sex offenders.  I nevertheless would conclude
that appellant has failed to show that his trial attorney rendered inefficient
representation by failing to object to Russ’s testimony.  





[3]
Russ testified that Dr. Roy Luepnitz provided counseling to sexual offenders on
probation or parole.





[4]
Russ instead testified, “[I]f I have anybody on my caseload that is not an
American citizen, I have to contact immigration and let them know.  They will
come pick them up in my office and deport them back to Mexico or their
homeland.”  He further agreed with the prosecutor that he did not supervise
probationers who were removed from the country.  On redirect examination, however,
Russ clarified that he was referring to probationers who were in the country
illegally and to visitors with expired visas.  It is undisputed that appellant
is a legal resident and that defense counsel repeatedly drew this fact to the
jury’s attention.





[5]
In support of this argument, appellant cites only a statute concerning reentry
of removed aliens.  See 8 U.S.C.A. § 1326 (West 2005).  Neither
party contends that appellant was ever removed from this country or attempted
reentry after removal.  The statute therefore has no application here.





[6]
See also Villareal v. State, No. 14-00-00948-CR, 2001 WL 1249329, at *2
(Tex. App.—Houston [14th Dist.] Oct. 18, 2001, pet. ref’d) (not designated for
publication) (“[C]ounsel’s argument that appellant is an illegal alien and thus
likely to be deported after serving his punishment was a plausible trial
strategy in trying to induce the jury to impose a shorter sentence because
appellant would not thereafter pose a threat to the community.”).





[7]
See United States v. Cronic, 466 U.S. 648, 659 n.25, 104 S. Ct.
2039, 2047 n.25, 80 L. Ed. 2d 657 (1984).





[8]
See Cannon v. State, 252 S.W.3d 342, 350 (Tex. Crim. App. 2008)
(op. on reh’g) (presuming prejudice where defense counsel, asserting
unpreparedness, refused to participate in trial).





[9]
See, e.g., Geders v. United States, 425 U.S. 80, 91, 96 S. Ct. 1330,
1337, 47 L. Ed. 2d 592 (1976) (holding that sequestration order that prevented
defendant and attorney from conferring during a 17-hour overnight recess
violated Sixth Amendment, and reversing without requiring prejudice to be
shown); Herring v. New York, 422 U.S. 853, 863–65, 95 S. Ct. 2550,
2555–57, 45 L. Ed. 2d 593 (1975) (holding that statute permitting trial judge
to deny the right to closing argument violated criminal defendant’s Sixth
Amendment rights, and reversing without requiring a showing of prejudice).





[10]
This rule is subject to an exception.  A limited presumption of prejudice
applies to an “actual ineffectiveness” claim based on a conflict of interest.  See
Strickland, 466 U.S. at 692, 104 S. Ct. at 2067; Cuyler v. Sullivan,
446 U.S. 335, 349–50, 100 S. Ct. 1708, 1718–19, 64 L. Ed. 2d 333 (1980).  The
prejudice presumption applies to such a claim only if defense counsel’s
performance was adversely affected by his actual representation of conflicting
interests.  Strickland, 466 U.S. at 692, 104 S. Ct. at 2067; Cuyler,
446 U.S. at 349–50, 100 S. Ct. at 1718–19.  No such allegations have been
presented here.





[11]
Ante, at 14.





[12]
The majority states that these “are only additional factors that support the
conclusion that the testimony was in fact quite damaging” and that it
determined that Russ’s testimony was prejudicial based primarily on “the
damaging nature of Russ’s testimony.”  Ante, at 15 n.3.  But “prejudice”
and “damage” mean the same thing.  See Roget’s
II: The New Thesaurus 759 (Houghton Mifflin Co. ed., 3d ed. 1995); Webster’s Third New International Dictionary
1788 (Philip Babcock Gove ed., 3d ed. 1993).  Thus, to say that the testimony
was prejudicial—i.e., damaging—because the testimony was damaging—i.e.,
prejudicial—is circular.  The majority simply presumes that the nature of the
testimony was prejudicial, but as explained above, no such presumption applies
to claims of “actual ineffectiveness” such as those presented here.  When this
presumption is removed, nothing remains of the majority’s argument concerning
prejudice other than the comparative length of all of Russ’s testimony and the
jury’s refusal to recommend probation.





[13]
When asked what appellant did after receiving the guilty verdict, appellant’s
wife initially stated that the family just sat in a room together the whole
time, but when asked if appellant ran some errands, she admitted that he did go
to “advise the store” of the outcome of the trial.  When asked if appellant
went shopping for tires, she admitted this as well and testified that appellant
had changed a tire on their daughter’s vehicle.  





[14]
Appellant also complains of his counsel’s failure to object to improper jury
argument by the State.  According to appellant, “The State argued that upon
deportation, defendant would not be subject to probation supervision.”  He
contends that defense counsel rendered ineffective assistance by failing to
object to inflammatory and derogatory remarks to the jury about his ethnic,
national, and immigration characteristics.  These arguments have not been shown
to have any factual basis in the record.  None of the State’s arguments in the
punishment phase of trial contained any reference to deportation or to
appellant’s ethnicity, nationality, or immigration status, and appellant has
cited no inflammatory or derogatory references by the prosecutor to appellant’s
ethnicity, nationality, or immigration status.  I therefore would hold this
argument to be waived.  See Tex.
R. App. P. 38.1(i).





[15]
Appellant does not contend that defense counsel improperly elicited
extraneous-offense evidence, and as previously mentioned, he cites no evidence
of improper jury argument.  Thus, the cases he cites in support of his
“national origin” argument are distinguishable.  See, e.g., Ex parte
Walker, 777 S.W. 2d 427, 432 (Tex. Crim. App. 1989) (en banc) (eliciting
hearsay and extraneous-offense evidence was prejudicial); Standard Fire Ins.
Co. v. Reese, 584 S.W.2d 835, 840 (Tex. 1979) (civil case finding no
reversible error where attorney argued that lawyer and doctor worked together
to increase medical bills); Tex. Employers’ Ins. Ass’n v. Haywood, 153
Tex. 242, 246, 266 S.W.2d 856, 858–59 (Tex. 1926) (workers’ compensation case
in which court found prejudice where attorney made a blatant plea for jury to
decide case based on idea that witnesses’ “color alone was . . . a badge of
perjury”); Brown v. State, 974 S.W.2d 289, 293–94 (Tex. App.—San Antonio
1998, pet. ref’d) (op. on reh’g) (eliciting evidence of extraneous drug
offenses was prejudicial); Holiday Inn v. State, 931 S.W. 2d 614, 626–27
(Tex. App.—Amarillo 1996, writ denied) (civil case in which evidence of alien
citizenship was held to be not prejudicial); Riascos v. State, 792 S.W.
2d 754, 758 (Tex. App.—Houston [14th Dist] 1990, pet. ref’d) (concerning
improper jury argument); Matter of Knighton, 685 S.W. 2d 719, 721 (Tex.
App.—Amarillo 1984, no writ) (civil case in which it was held that asking a jury
to decide custody of children based on wife’s religion was prejudicial); Tex.
Employers’ Ins. Ass’n v. Jones, 361 S.W.2d 725, 727 (Tex. App.—Waco 1962,
writ ref’d n.r.e.) (workers’ compensation case in which court found harm from
improper jury argument based on racial and religious prejudice); Penate v.
Berry, 348 S.W.2d 167, 168 (Tex. App.—El Paso 1961, writ ref’d n.r.e.)
(civil case in which the court held that it was incurably prejudicial for an
attorney to urge the jury to decide a case based on citizenship).