Opinion issued February 3, 2011



In The

Court of
Appeals

For The

First District
of Texas

————————————

NO. 01-09-00864-CR

———————————

JOHN PAUL WALDON, Appellant

V.

The State of
Texas, Appellee



 



 

On Appeal from the 262nd Judicial District Court 

Harris County, Texas



Trial Court Case No. 1199792

 



 

MEMORANDUM OPINION

The trial
court found appellant, John Paul Waldon, guilty of the offense of unlawful
possession of a firearm by a felon[1] and, after finding true
the allegations in two enhancement paragraphs that appellant had two prior
felony convictions, assessed his punishment at confinement for twenty-five
years.  In two points of error, appellant
contends that the evidence is legally and factually insufficient to support his
conviction.  

We modify the judgment and affirm as modified.  

Background

          Harris
County Sherriff’s Office (“HCSO”) Deputy D. Pacifico testified that shortly
after midnight on January 20, 2009, he was dispatched to a disturbance at a gas
station involving two black males, one of which “had a weapon,” in a tan-colored
Jaguar and another black male in a white sports-utility vehicle (“SUV”).  Because Pacifico was only “400 yards” from the
gas station, he was able to respond “[w]ithin a few seconds.”  As Pacifico responded, he saw appellant driving
the Jaguar.  Pacifico initiated a traffic
stop, and when he approached the Jaguar, he saw appellant and Gerald Freeman,
who was sitting in the Jaguar’s front passenger seat.  After appellant consented to a search of the
Jaguar, Pacifico discovered that the back seat of the Jaguar “had been set up
so that you [could] just lift it up.”  Underneath
the backseat, Pacifico found a large plastic bag containing $15,000 in
counterfeit United States currency.  Freeman
initially stated that “the money was his,” but then disclaimed ownership of it after
he was informed that it was counterfeit. 
Appellant and Freeman “started talking amongst each other,” saying “you
need to own up to this” and “you need to own up to that.” 

Deputy Pacifico noted that another HCSO
Deputy, J. Curry, participated in the traffic stop of the Jaguar, and Curry found
a loaded handgun underneath the Jaguar’s hood. 
Although he did not see Curry recover the handgun, Pacifico explained
that the Jaguar’s hood opened “pretty much opposite of other vehicles” and Curry
had found the handgun “in the front on the driver’s side underneath the hood”
and “somewhere in the engine compartment.” 
Pacifico noted that “[n]either person in the vehicle would take
responsibility for what was theirs,” and, after appellant and Freeman argued about
who owned the gun, Pacifico could not get a “clear response,” and both appellant
and Freeman “clammed up.”  Pacifico
reported that the Jaguar was registered to appellant, and the State introduced
the vehicle registration into evidence. 

          On
cross-examination, Pacifico stated that the person who had reported the
disturbance had indicated that one of the men at the gas station had a handgun.  After being dispatched, Pacifico saw
appellant “speeding past” him in the Jaguar, but he never saw the SUV.  Pacifico agreed that it was “a short amount
of time” from the moment he received the dispatch to the time he stopped the
Jaguar.  After appellant introduced into
evidence an audiotape of the disturbance call and Pacifico listened to the
recording, Pacifico agreed that the person who had reported the disturbance saw
an individual pulling a handgun “out of his back” and loading it with bullets.  Pacifio also agreed that he did not find a handgun
on either appellant or Freeman’s person and the person who had reported the
disturbance had not mentioned anything about the hood of the Jaguar being
opened.      

          Deputy
Pacifico further testified that appellant and Freeman had told him they were going
to see a friend, but he did not believe their “story.”   Appellant was “extremely friendly,” and,
based upon Pacifico’s experience, he believed that appellant was trying to
“distract” him.  Pacifico noted that the
counterfeit money was found in the “middle” of the Jaguar underneath the back
seat.  After conducting a background
check on both appellant and the passenger during the stop, Pacifico learned
that both appellant and Freeman had “very extensive criminal histories.”    

          HCSO
Deputy J. Curry testified that he was also dispatched to the disturbance, and he
noted that the person who had reported the disturbance believed it was “some
kind of drug deal.”  Curry explained that
the Jaguar had a hood that opened from the windshield, and he “popped the hood”
and found a handgun “right inside where the fender wheel is.”  The handgun “was sitting in plain sight right
there” on the driver’s side.  Although Curry
noted that the handgun was in “a place where things are normally held,” he conceded
that he was “not familiar enough with the inside of a Jaguar.” After retrieving
the handgun, Curry unloaded it and found that it contained six rounds.  

          On
cross-examination, Deputy Curry agreed that one would have to raise the hood  of the Jaguar to access the location where he
found the handgun.   He also agreed that it was “just a few
minutes” between the time of the dispatch call and the time of the traffic stop,
and he noted that the deputies stopped appellant in a Walgreens parking lot
less than 150 yards from the gas station.

          Secret
Service Special Agent R. Hill testified that the deputies contacted his agency regarding
the counterfeit currency and it was “pretty obvious” to the “average person”
that it was counterfeit.  Hill spoke with
appellant to inquire about how he obtained the money, but appellant, who Hill
described as being very “verbal,” only responded that “he was not a rat.”

Toni Waldon, appellant’s ex-wife,
testified that she owned the Jaguar, she regularly drove the Jaguar, and she
was not aware of any secret compartments in the Jaguar.  She explained that when she bought the
Jaguar, its backseat “would move” and “would keep sliding up.”  On cross-examination, Waldon noted that she “co-owned”
the Jaguar with appellant and denied placing the counterfeit money or the handgun
into the car.  

Appellant testified that he did not
consent to Deputy Pacifico’s request to search the Jaguar, but the deputies
searched the car three or four times until they found the plastic bag containing
the money.  Freeman immediately claimed
that the bag was his, but when a deputy told them that the money was
counterfeit, Freeman denied that the money was his.  Freeman then told appellant, “You need to
take that,” and appellant told Freeman to stop talking to him.  One of the deputies then went to check on a white
suburban while the other deputy continued the search.  When the other deputy returned, he continued
the search of the Jaguar and “all of the sudden” found the handgun.   When the deputy asked appellant if the handgun
was his, appellant responded, “I don’t know what you are talking about.”  When the Secret Service Agent asked appellant
about the money, appellant told him that he did not know anything about the
money.  

On cross-examination, appellant agreed
that he was driving the Jaguar, which he co-owned, but explained that he did
not like to drive the Jaguar because its rims made it an attractive target for
crime. He admitted that he had exited the Jaguar at the gas station and entered
a friend’s car to speak with him for approximately three or four minutes while Freeman
remained in the Jaguar.  Appellant denied
participating in a narcotics deal or owning the handgun, and he explained that
he does not “even go under the hood of [his] car half the time.”  Appellant stated that, contrary to the
information provided by the person who reported the disturbance, no one had
taken a handgun out from behind their back and loaded it with bullets while at
the gas station. 

Standard of Review

We review the legal sufficiency of the evidence by
considering all of “the evidence in the light most favorable to the prosecution”
to determine whether “a rational trier of fact could have found the essential
elements of the crime beyond a reasonable doubt.”  Jackson v. Virginia, 443 U.S. 307, 318–19, 99 S. Ct.
2781, 2788–89 (1979).  Evidence is legally insufficient when
the “only proper verdict” is acquittal.  Tibbs v. Florida, 457 U.S. 31, 41–42, 102 S. Ct. 2211, 2218
(1982).  Our role is
that of a due process safeguard, ensuring only the rationality of the trier of
fact’s finding of the essential elements of the offense beyond a reasonable
doubt.  See Moreno v. State, 755 S.W.2d 866, 867 (Tex.
Crim. App. 1988).  We give deference to
the responsibility of the fact finder to fairly resolve conflicts in testimony,
to weigh evidence, and to draw reasonable inferences from the facts.  Williams v. State, 235 S.W.3d 742, 750 (Tex. Crim. App.  2007). 
However, our duty requires us to “ensure that the evidence presented
actually supports a conclusion that the defendant committed” the criminal
offense of which he is accused.  Id. 

          We
now review the factual sufficiency of the evidence under the same appellate
standard of review as that for legal sufficiency.  Ervin v. State, No. 01-10-00054-CR, 2010 WL 4619329, at *2–4 (Tex.
App.—Houston [1st Dist.] Nov. 10, 2010, no pet. h.).  

Sufficiency of the Evidence

          In
his first and second points of error, appellant argues that the evidence is
legally and factually insufficient to support his conviction because “there is
not adequate evidence linking him” to the handgun and, even if there is legally
sufficient evidence, “the proof of his guilt is so weak as to undermine the
confidence in the jury’s verdict.”  

To prove unlawful possession of a firearm, the State had to present
evidence that appellant “possessed” a firearm.  See Tex. Penal Code Ann. § 46.04 (Vernon
Supp. 2010).  “Possession” means “actual
care, custody, control, or management.”  Id. § 1.07(a)(39) (Vernon Supp. 2010).  Possession is a “voluntary act if the
possessor knowingly obtains or receives the thing possessed or is aware of his
control of the thing for a sufficient time to permit him to terminate his control.”
 Id.
§ 6.01(b) (Vernon 2003).  

When, as here, the accused is not in exclusive possession of the place
where contraband is found, additional independent facts and circumstances must
“link” the accused to the contraband “in such a way that it can be concluded
that the accused had knowledge of the contraband and exercised control over
it.”  Roberson
v. State, 80 S.W.3d 730, 735 (Tex. App.—Houston [1st Dist.] 2002, pet. ref’d);
see Brown v. State, 911 S.W.2d 744,
748 (Tex. Crim. App. 1995).  The evidence
used to prove possession can be direct or circumstantial, and in either case,
the State must establish that the defendant’s connection with the contraband
was “more than just fortuitous.”  Evans v. State, 202 S.W.3d 158, 161
(Tex. Crim. App. 2006); Poindexter v.
State, 153 S.W.3d 402, 405–06 (Tex. Crim. App. 2005).  The links must raise a
reasonable inference that the accused knew of and controlled the
contraband.  Dickerson v. State,
866 S.W.2d 696, 700 (Tex. App.—Houston [1st Dist.] 1993, pet. ref’d).  Mere presence is insufficient to show that a
person possessed contraband.  Evans, 202
S.W.3d at 162.  

Texas courts have
identified “many non-exhaustive factors” that may demonstrate a link to
contraband.  Roberson, 80 S.W.3d at 735.  These factors constitute “a shorthand way of
expressing what must be proven to establish that” the accused knowingly
possessed the contraband.  Id. 
 Among the many possible factors
that we may consider in deciding whether there is a link between a defendant
and contraband are whether (1) the contraband was in plain view; (2) the
contraband was in close proximity and conveniently accessible to the accused;
(3) the accused was the owner of the place where the contraband was found; (4) the
accused was the driver of the automobile in which contraband was found; (5) the
place where the contraband was found was enclosed; and (6) the size of the item
was large enough to indicate the accused’s knowledge of its existence.  Cole v.
State, 194 S.W.3d 538, 548–49 (Tex. App.—Houston [1st Dist.] 2006, pet.
ref’d) (citing Gilbert v. State, 874
S.W.2d 290, 298 (Tex. App.—Houston [1st Dist.] 1994, pet. ref’d)); Robles v. State, 104 S.W.3d 649, 651
(Tex. App.—Houston [1st Dist.] 2003, no pet.).  Other factors include whether the accused
possessed other contraband when arrested, the accused made incriminating
statements when arrested, whether the accused attempted to flee, the accused
made furtive gestures, whether other contraband was present, the accused was
found with a large amount of cash, and the conduct of the accused indicated a
consciousness of guilt.  Evans, 202 S.W.3d at 162
n.12.  The number of
linking factors present is not as important as the “logical force” they create
to prove that an offense was committed.  Roberson, 80 S.W.3d at 735. 

In support of his sufficiency
challenge, appellant notes that he was not in actual possession of the handgun,
it was not “readily visible from the outside” of the Jaguar and “could be seen
only by looking under the hood,” he made no statements indicating his ownership
or awareness of the handgun, no contraband “other than the counterfeit money”
was found, he did not flee, there was no evidence he made any furtive gestures,
the person who reported the disturbance did not “identify which black male had”
the handgun and “did not mention anything about the hood being raised, and
appellant “had little time to hide the gun.” 
Appellant also notes that that the trial court found him not guilty of
possessing the counterfeit money, even though the money was “in closer proximity”
to him than the handgun.  Finally,
appellant asserts that since Freeman initially admitted to owning the money,
“there is no reason to believe [Freeman] did not also put the firearm
underneath the hood” of appellant’s Jaguar. 


The deputies testified that a person
called for emergency assistance and reported seeing two men in a tan Jaguar and
one man in a white SUV meet at a gas station and engage in suspicious
activity.  According to the report, as
testified to by the deputies, the person observed one of these men in
possession of a handgun.   Specifically,
the person reported that one of these men removed the handgun from behind his
back and loaded it with bullets.  The
deputies testified that shortly after being dispatched to the gas station, the
deputies saw appellant driving his tan Jaguar in the immediate vicinity of the disturbance.  Deputy Pacifico specifically testified that
appellant was “speeding” down the road toward him.  The deputies explained that it was late at
night, there was little traffic in the area, appellant’s Jaguar matched the
description of the Jaguar provided in the dispatch, and they initiated a
traffic stop of the Jaguar in the parking lot of a Walgreens, which is across
the street and less than 150 yards from the gas station.  

Appellant was a co-owner and the
driver of the Jaguar.  The other co-owner
of the Jaguar, appellant’s wife, denied placing either the counterfeit money or
the handgun in the Jaguar.  The handgun
was found by Deputy Curry underneath the hood and on the driver’s side of the
Jaguar, in closer proximity to appellant than Freeman.  Although appellant denied possessing a handgun
while at the gas station and placing the handgun under the Jaguar’s hood,
appellant admitted that, while parked at the gas station, he exited the Jaguar
and entered the SUV for approximately three to four minutes to talk to his
friend while Freeman remained in the Jaguar.  Appellant’s testimony also indicates that the
occupant of the SUV remained in the SUV with appellant to engage in the conversation.  Finally, Deputy Curry explained that after he
opened the hood of the Jaguar, he found the handgun “sitting in plain sight
right there” on the driver’s side.  

Although the record
does not contain pictures of the Jaguar or the location in which the handgun
was found, the deputies’ testimony establishes that the handgun, located in a
compartment on the driver’s side of the car and underneath its hood, was in
close proximity to appellant.  And,
although the handgun was found underneath the hood, the record also supports
the inference that the handgun was conveniently accessible to appellant.  Deputy Curry explained that, as soon as he
“popped” the hood, the handgun was in plain sight.  Moreover, the fact that the handgun was found
hidden in an enclosed space may provide another link to appellant.  Deputy Pacifico’s testimony that
appellant and Freeman “started talking amongst each other” and saying “you need
to own up to this” and “you need to own up to that” provide evidence supporting
an inference that both men made incriminating statements during
the traffic stop, or at least statements that might support an inference of
consciousness of guilt.  Pacifico also
testified that, based upon his experience, appellant was acting in an overly
friendly way and he believed that he was trying to distract him with his
behavior, further supporting an inference of consciousness of guilt.

Appellant did deny
owning the handgun and having knowledge of its existence.  Appellant also denied displaying a gun at the
gas station, and he stated that no one in the group at the station had
exhibited or loaded a gun.  However, as
the exclusive judge of the facts, the credibility of the witnesses, and the
weight to be given their testimony, the trial court was free to believe or
disbelieve all or any part of appellant’s testimony.  McKinny
v. State, 76 S.W.3d 463, 468–69 (Tex.
App.—Houston [1st Dist.] 2002, no pet.).  From this evidence, a
rational trier of fact could have found, beyond a reasonable doubt, that
appellant, as the owner and driver of the Jaguar at the time the handgun was
found underneath the Jaguar’s hood, possessed the handgun.[2]  Accordingly, we hold that the evidence is
sufficient to support appellant’s conviction for the offense of unlawful
possession of a firearm.  See
Ervin, 2010 WL 4619329, at
*2–4.

          We
overrule appellant’s first and second points of error.

Correction
of the Judgment

The State contends
that the written judgment should be corrected because it fails to properly
reflect that appellant entered pleas of not true to the allegations in the enhancement
paragraphs and the trial court found the allegations in the enhancement
paragraphs to be true.  An appellate
court may correct and reform a trial court’s judgment when it has the necessary
information to do so.  See Tex.
R. App. P. 43.2(b); Nolan v. State,
39 S.W.3d 697, 698 (Tex. App.—Houston [1st Dist.] 2001, no pet.).  Appellant does not challenge the State’s
request.

The record reflects
that appellant entered pleas of not true to the allegations in both enhancement
paragraphs and the trial count found the allegations in both enhancement
paragraphs true.  Nevertheless, the
written judgment entered by the trial court incorrectly states that appellant
entered a plea of true to the second enhancement paragraph and the trial count
found the allegation in the first enhancement paragraph not true.   

Accordingly, we reform
the written judgment to reflect that appellant pleaded not true to the
allegation in the second enhancement paragraph and the trial court entered a
finding that the allegation in the first enhancement paragraph is true.

Conclusion

          We modify
the judgment of the trial court and affirm the judgment as modified.  

 

 

                                                                   Terry
Jennings

                                                                   Justice


 

Panel
consists of Justices Jennings, Higley, and Brown.

Do
not publish.  Tex. R. App. P. 47.2(b).

 











[1]           See
Tex. Penal Code Ann. § 46.04(a)
(Vernon Supp. 2010).





[2]
          Appellant attempts to contrast
the facts in his case with those present in Bollinger
v. State, 224 S.W.3d 768 (Tex. App.—Eastland 2007, pet. ref’d) and Powell v. State, 112 S.W.3d 642 (Tex.
App.—Houston [1st Dist.] 2003, pet. ref’d). 
Appellant asserts that, unlike the facts in these cases, he “made no
statements indicating his ownership, or awareness of the firearm.”  As appellant notes, in Bollinger, the defendant’s “statements to the deputies support no
conclusion other than the fact that he knew [the firearms] were there” and, in Powell, the defendant “volunteered
information about the shotgun, rather than expressing surprise that the
officers had found a shotgun in the trunk in the first place.”  Bollinger,
224 S.W.3d at 775; Powell, 112 S.W.3d
at 645.  Certainly, statements like those
in Bollinger and Powell provide more direct
evidence of a defendant’s unlawful possession of contraband.  But, we are not compelled to find the
evidence insufficient in this case simply because appellant did not make any
statements suggesting knowledge of the handgun. 
Rather, as set forth above, the links in
this case support the reasonable inference that appellant had knowledge of the handgun
and exercised control over it.