

**IN THE**
**TENTH COURT OF APPEALS**

**No. 10-17-00143-CR**

**JOE LUIS BECERRA,**

                                                              **Appellant**

 **v.**

**THE STATE OF TEXAS,**

                                                              **Appellee**

**From the 361st District Court**
**Brazos County, Texas**
**Trial Court No. 14-03925-CRF-361**

**O P I N I O N**

        Joe Luis Becerra appeals from a conviction for possession of a firearm by a felon.

TEX. PENAL CODE ANN. § 46.04 (West 2011).[1]  Becerra complains that his right to a twelve-

person jury pursuant to the Texas Constitution was violated because an alternate juror

was present during deliberations, that the presence of the alternate juror during

---

[1] Becerra was also charged with murder; however, the State elected to proceed to trial on the possession of a firearm offense only.

deliberations violated Articles 33.01, 33.011, and 36.22 of the Code of Criminal Procedure, that the evidence was legally insufficient, and that the admission of impeachment testimony violated the Confrontation Clause of the United States Constitution. Because we find no reversible error, we affirm the judgment of the trial court.

## THIRTEENTH JUROR

In his first issue, Becerra complains that his right to a jury composed of only twelve persons pursuant to Article V, Section 13 of the Texas Constitution was violated because an alternate juror was present during part of jury deliberations in the guilt-innocence phase of the trial. In his second issue, Becerra complains that the presence of the alternate juror during jury deliberations violated Articles 33.01, 33.011, and 36.22 of the Code of Criminal Procedure.

Article V, Section 13 of the Texas Constitution and Article 33.01 of the Code of Criminal Procedure direct that juries in district courts are to contain twelve members. TEX. CONST. Art. V, Sec. 13; TEX. CODE CRIM. PROC. ANN. art. 33.01 (West 2006). Alternate jurors are permitted to be selected and sworn in, and Article 33.011(b) of the Texas Code of Criminal Procedure states that an alternate juror, if not called upon to replace a regular juror, shall no longer be discharged at the time the jury retires to deliberate and shall be discharged after the jury has rendered a verdict. TEX. CODE CRIM. PROC. ANN. art. 33.011(b) (West Supp. 2018). The statute does not give direction as to the whereabouts of the alternate juror during deliberations. However, Article 36.22 of the Texas Code of

Criminal Procedure states that "[n]o person shall be permitted to be with a jury while it is deliberating." TEX. CODE CRIM. PROC. ANN. art. 36.22 (West 2006).

In this proceeding, voir dire was conducted by the elected judge of the district court. An alternate juror was selected during voir dire. A visiting judge conducted the rest of the trial after voir dire was completed. When the jury retired to begin its deliberations as to guilt or innocence, the alternate juror went into the jury room with the panel. Around forty-five minutes later, the State advised the bailiff that the alternate was in the jury room with the jury, and the bailiff brought it to the attention of the trial court. The trial court removed the alternate juror and placed him in a separate room.

The trial court then conducted a hearing regarding the alternate juror. The trial court and the attorneys for the State and Becerra discussed the holdings in *Trinidad v. State*, 312 S.W.3d 23 (Tex. Crim. App. 2010) in order to determine how to proceed. The State requested an instruction to be given to the jury to disregard any participation by the alternate juror. The trial court agreed to give an instruction. Counsel for Becerra agreed with the substance of the instruction, but asked for a mistrial "based on the presence of the juror, preserving any error, if any" even though he informed the trial court he did not have any indication of harm at that point. Counsel for Becerra did not seek to question the alternate juror or other jurors regarding what the alternate's participation in deliberations had been or whether the alternate had impacted any juror's vote. The trial court overruled Becerra's motion for mistrial and called the jury back to give them an

instruction.

The instruction given to the jury was as follows:

Members of the jury, jury deliberations began at 9:45 a.m. At 10:31 a.m., the Court realized that the alternate juror, [alternate juror], was allowed into the jury room by mistake and [alternate juror] was at that time asked to separate from the jury. [Alternate juror] has been placed in a separate room over here and he will continue to serve as the alternate juror in this case. He simply cannot be present during the deliberations of the 12 jurors.

You are to disregard any participation during your deliberations of the alternate juror, [alternate juror]. And following an instruction on this extra note that the Court received, you should simply resume your deliberations without [alternate juror] being present.

The jury was then sent back into the jury room to resume deliberations and returned a verdict of guilty, which was confirmed when the jury was polled individually.

Becerra filed a motion for new trial, alleging violations of Texas Constitution Article V, Section 15 and Articles 33.01, 33.011, and 36.22 of the Code of Criminal Procedure with an affidavit from one of the jurors (not the alternate) attached. In the affidavit, the juror stated that the alternate juror voted on the verdict of guilty prior to the bailiff discovering the alternate juror's presence and that the remaining panel did not vote again on the issue of guilt or innocence after the alternate was removed.

The State argues that Becerra's motion for mistrial was not preserved because he did not state the specific legal grounds for his motion at the time that it was made. While Becerra's motion was not in and of itself specific, the dialogue between the trial court and the attorneys demonstrates that the legal theories upon which the motion was based were

those set forth in *Trinidad* and were apparent from the context. *See* TEX. R. APP. P. 33.1(a). We do not agree with the State that the issues raised in the motion were not adequately preserved due to the lack of specificity.

However, we must also determine whether or not the objection and motion for mistrial were timely. In order to preserve a complaint for appellate review, a party must timely object, stating the specific legal basis for the objection if it is not apparent from the context of the objection. TEX. R. APP. P. 33.1(a)(1); *Clark v. State*, 365 S.W.3d 333, 339 (Tex. Crim. App. 2012). An objection is timely if made at the earliest opportunity or as soon as the grounds for the objection become apparent and made at a time when the judge is in the proper position to do something about it. *Pena v. State*, 285 S.W.3d 459, 464 (Tex. Crim. App. 2009). This gives the trial judge an opportunity to correct, or in this case, prevent the error. Even most constitutional errors can be forfeited at trial if a party fails to properly object. *Briggs v. State*, 789 S.W.2d 918, 924 (Tex. Crim. App. 1990).

In this instance, the grounds for Becerra's objection to the alternate juror being sent into the jury room were apparent at the time it happened, which was when the jury began deliberations. Becerra's counsel was aware that there was an alternate juror selected and that the alternate juror sat with the jury during the trial. There is nothing in the record to indicate that Becerra's counsel was not present or was in some other way unable to observe the jury panel at the time the jury panel was sent to begin deliberations. Because Becerra did not object at the time the jury was sent to deliberate, his objection and motion

for mistrial were not made at the time the trial court was in the proper position to prevent the error, and therefore were not timely.[2] Further, because the objection to the presence of the alternate juror was not timely, the complaints raised in Becerra's motion for new trial were also not preserved by a timely objection. We overrule issues one and two.

## SUFFICIENCY OF THE EVIDENCE

In his third issue, Becerra complains that the evidence was insufficient for the jury to have found that he possessed a firearm or that he used or exhibited a deadly weapon in the course of his possession of a firearm. The jury found that Becerra was a felon who possessed a firearm and in a special issue, the jury also made an affirmative deadly weapon finding, which required the jury to find that he used or exhibited the deadly weapon during the commission of the offense.

The Court of Criminal Appeals has expressed our standard of review of a sufficiency issue as follows:

> When addressing a challenge to the sufficiency of the evidence, we consider whether, after viewing all of the evidence in the light most favorable to the verdict, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979); *Villa v. State*, 514 S.W.3d 227, 232 (Tex. Crim. App. 2017). This standard requires the appellate court to defer "to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Jackson*, 443 U.S. at 319. We may not re-weigh

---

[2] Even if the objection did not have to be made at the earliest time it should have been discovered, we find that Becerra could have objected to the instruction given to the jury and requested to question the juror regarding what had already transpired and ask that the jury be required to revote if needed. We find that this also would have allowed the trial court the opportunity to correct the error. Any complaint regarding the instruction was waived by Becerra's failure to object to it.

the evidence or substitute our judgment for that of the factfinder. *Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007). The court conducting a sufficiency review must not engage in a "divide and conquer" strategy but must consider the cumulative force of all the evidence. *Villa*, 514 S.W.3d at 232. Although juries may not speculate about the meaning of facts or evidence, juries are permitted to draw any reasonable inferences from the facts so long as each inference is supported by the evidence presented at trial. *Cary v. State*, 507 S.W.3d 750, 757 (Tex. Crim. App. 2016) (*citing Jackson*, 443 U.S. at 319); *see also Hooper v. State*, 214 S.W.3d 9, 16-17 (Tex. Crim. App. 2007). We presume that the factfinder resolved any conflicting inferences from the evidence in favor of the verdict, and we defer to that resolution. *Merritt v. State*, 368 S.W.3d 516, 525 (Tex. Crim. App. 2012). This is because the jurors are the exclusive judges of the facts, the credibility of the witnesses, and the weight to be given to the testimony. *Brooks v. State*, 323 S.W.3d 893, 899 (Tex. Crim. App. 2010). Direct evidence and circumstantial evidence are equally probative, and circumstantial evidence alone may be sufficient to uphold a conviction so long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction. *Ramsey v. State*, 473 S.W.3d 805, 809 (Tex. Crim. App. 2015); *Hooper*, 214 S.W.3d at 13.

We measure whether the evidence presented at trial was sufficient to support a conviction by comparing it to "the elements of the offense as defined by the hypothetically correct jury charge for the case." *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). The hypothetically correct jury charge is one that "accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Id.*; *see also Daugherty v. State*, 387 S.W.3d 654, 665 (Tex. Crim. App. 2013). The "law as authorized by the indictment" includes the statutory elements of the offense and those elements as modified by the indictment. *Daugherty*, 387 S.W.3d at 665.

*Zuniga v. State*, 551 S.W.3d 729, 732-33 (Tex. Crim. App. 2018).

As relevant to this proceeding, a person who has been convicted of a felony commits the offense of unlawful possession of a firearm if he possesses a firearm after the

fifth anniversary of the person's release from confinement following a conviction of the felony "at a place other than the premises at which the person lives." TEX. PENAL CODE ANN. § 46.04(a)(2) (West 2011). To support a conviction for possession of a firearm, the state must prove (1) that the accused exercised actual care, control, or custody of the firearm, (2) that the accused was conscious of his connection with it, and (3) that he possessed the firearm knowingly or intentionally. *Bollinger v. State*, 224 S.W.3d 768, 773 (Tex. App.—Eastland 2007, pet. ref'd).

The sufficiency of the evidence to prove possession of a firearm by a felon is analyzed under the same rules for determining the sufficiency of the evidence in controlled substance possession cases. *Bollinger*, 224 S.W.3d at 773. The State can meet its burden with direct or circumstantial evidence, but it must establish that the defendant's connection to the firearm was more than fortuitous. *Id*. at 774. Factors which can establish that the accused's connection to the firearm was not merely fortuitous include whether the firearm was in a car driven by the accused, whether the firearm was in a place owned by the accused, whether the firearm was conveniently accessible to the accused, whether the firearm was found in an enclosed space, and whether the accused made any affirmative statement connecting him to the firearm. *Id*.

Becerra does not dispute that he had previously been convicted of a felony offense. Rather, he argues that there was insufficient evidence to connect him to the firearm in question. Becerra also argues that the evidence was insufficient to show that the special

issue regarding a deadly weapon was true. The special issue finding made by the jury was that Becerra had committed the possession of the firearm by "using or exhibiting a deadly weapon, to-wit: a firearm, which in the manner of its use or intended use was capable of causing death or serious bodily injury, namely, by discharging said firearm at, or in the direction of, Jose Guardado-Rivera."

FACTS

Becerra's sister Michelle was at a party at the residence of her daughter, Heather Becerra and the victim, Jose Guardado-Rivera. Becerra and Becerra's girlfriend, Sylvia were at the party also. Becerra was upset with how Jose treated Heather because he had left bruises on her arms. After some time, Michelle and Sylvia were going to leave to take Michelle's daughter Selena home when Becerra asked Sylvia for "cuete" out of her vehicle. The vehicle was owned by Sylvia, but Becerra had been driving it that day because Sylvia was at work. Michelle told the detectives who interviewed her later that Becerra was asking for a gun.[3] Michelle testified that Sylvia looked in the car and retrieved something small from under the driver's seat of her vehicle which Michelle believed was a gun. Michelle attempted to convince Sylvia to hide the gun and not give it to Becerra. According to Michelle's testimony based on the statement she had given to law

---

[3] Michelle testified for the first time at trial that "cuete" could also mean that Becerra was asking for drugs or fireworks. It was the jury's role to determine whether to believe that Becerra was asking for drugs or a gun. Presumably the jury found that Michelle's prior statements that Becerra was asking for a gun was credible. We do not find that determination to be unreasonable.

enforcement four days after the shooting, Sylvia took the gun and gave it to Becerra. Selena also testified that she thought that she had heard Becerra yell for Sylvia to bring him a gun and that Sylvia had rummaged around and gone to where Becerra was.[4]

One of the investigating detectives testified that Sylvia had told him that Becerra had asked her to retrieve a gun from under the driver's floor mat.[5] Sylvia did not know what type of gun it was but that it was "little bitty." Sylvia told the detective that she had delivered the gun to Becerra.

After Sylvia and Michelle returned from taking Selena home, Becerra and Jose got into an altercation and Becerra punched Jose. Michelle, Sylvia, and Heather decided to leave because there were children present. A neighbor testified that three men went upstairs after this and approximately ten minutes later, the neighbor heard a gunshot. The neighbor saw one man leave and walk in a certain direction. A second man later came and told the neighbor's husband that someone had shot someone else. Becerra was located approximately twenty minutes later walking in the direction the neighbor had indicated. At trial, the neighbor was not asked to identify Becerra and did not do so. Jose had been shot and died from his injury.

The forensic examiner who conducted the autopsy testified that based on her

---

[4] Selena also testified for the first time at trial that "cuete" could also mean drugs or fireworks but admitted that she had told law enforcement and the prosecutors each time they spoke with her before trial that Becerra had asked for a gun.

[5] Sylvia did not testify at trial. The propriety of the admission of this testimony is the basis of Becerra's fourth issue which will be discussed below.

examination of the gunshot wound, the wound was caused by a gunshot that came from the distance of between a centimeter to up to 2-3 feet away. A forensic chemist testified that gunshot residue was found on Becerra's hands, but explained that gunshot residue can travel up to 20 feet out of the muzzle and can transfer onto someone else. Further, the chemist testified that gunshot residue could be caused by firing the weapon, being close to the person who fired the weapon, or touching something that had the residue on it, such as the weapon or casing.

The bullet recovered from Jose's remains was from a small caliber weapon which was likely a .22. The gun was not recovered.

ANALYSIS

We find that the evidence was sufficient for the jury to have found that Becerra possessed the firearm. Sylvia's statement to law enforcement that she had given the gun to Becerra when he requested it is supported by Michelle and Selena's testimony. While Sylvia's statements were objected to on the basis of confrontation and hearsay as will be discussed in issue four, the evidence was admitted for all purposes when Becerra did not seek to limit the purpose of the testimony to impeachment only. Our review of the sufficiency of the evidence includes all of the evidence, whether properly or improperly admitted. *Moff v. State*, 131 S.W.3d 485, 489 (Tex. Crim. App. 2004). We do not find that the jury was unreasonable to infer that based on what Michelle and Serena saw and heard that Sylvia gave Becerra a gun that he knew was in the vehicle that he had been driving

that day.

As to the deadly weapon finding, article 42A.054(b) of the Texas Code of Criminal Procedure provides in relevant part that a trier of fact may make, upon sufficient evidence, an "affirmative finding" "that a deadly weapon … was used or exhibited during the commission of a felony offense or during immediate flight therefrom, and that the defendant used or exhibited the deadly weapon." TEX. CODE CRIM. PROC. art. 42A.054(b)-(c). "The State need not establish that the use or intended use of an implement actually *caused* death or serious bodily injury; only that 'the manner' in which it was either used or intended to be used was 'capable' of causing death or serious bodily injury." *Moore v. State*, 520 S.W.3d 906, 908 (Tex. Crim. App. 2017) (emphasis in original).

Generally, mere possession of a firearm by a felon, without more, is not susceptible to a deadly weapon finding.[6] Mere possession of a weapon without utilizing it to achieve an intended result or purpose does not constitute the use of that weapon for the purposes of an affirmative finding. *See Ex parte Petty*, 833 S.W.2d 145 (Tex. Crim. App. 1992); *Narron v. State*, 835 S.W.2d 642, 644 (Tex. Crim. App. 1992); *Patterson v. State*, 769 S.W.2d 938, 941 (Tex. Crim. App. 1989).

Becerra argues that there was insufficient evidence to link him to the use of the deadly weapon to shoot Jose. We find that the evidence was sufficient to affirmatively

---

[6] Because the issue is not preserved or briefed, we need not decide the issue discussed at oral argument of whether a deadly weapon finding is appropriate in a case in which the only offense tried and for which the defendant is found guilty is the possession of a firearm by a felon. We address this issue as presented.

link Becerra's possession of the firearm given to him by Sylvia to the shooting of Jose. We do not find that the jury's determination was unreasonable that Becerra had hidden the gun that was used to shoot Jose under the mat in the driver's seat in the vehicle that he had driven that day, and that Becerra asked Sylvia to bring him the gun, which she did. A short time later, Jose was shot by a small-caliber firearm that was consistent with the description of the gun given to Becerra as "little bitty." Three men were in the apartment at the time of the shooting—the victim, Becerra, and a third man. Becerra left immediately after the neighbor heard the gunshot; however, the other man remained at the scene. It is not unreasonable to infer that after Becerra shot Jose, he immediately departed and got rid of the gun, which would explain how the gun was not found at the scene of the shooting. The evidence to support the jury's affirmative finding regarding the deadly weapon was sufficient. Having found that the evidence was sufficient as to both the possession of the firearm and the deadly weapon finding, we overrule issue three.

### ADMISSION OF EVIDENCE

In his fourth issue, Becerra complains that the trial court erred by admitting testimony of the detective regarding statements Sylvia had made to the detective because his right to confrontation was denied because Sylvia did not testify at trial. During Becerra's cross-examination of Michelle, counsel for Becerra asked Michelle if, when Becerra asked for "cuete," Sylvia had said to her that "he wants that stuff," which Michelle

contended was heroin and not a firearm. Michelle answered in the affirmative and agreed that Sylvia's reference to "stuff" would not indicate a gun but did indicate that Becerra was asking Sylvia for heroin, which was a drug that Becerra had abused in the past. Michelle testified that she did not tell the detective this when he questioned her because she was intimidated and felt like the officers were trying to put words into her mouth. Michelle testified that she was also afraid that Becerra would get into trouble over drugs because he was high and drunk the night of the shooting.

The State sought to admit testimony of the detective who had interviewed Michelle and Sylvia pursuant to Rule 806 of the Rules of Evidence in order to attempt to impeach Michelle's testimony regarding what Sylvia had said regarding "cuete" and whether that meant drugs or a gun. Becerra objected that the admission of the statements Sylvia made to the detective were hearsay and violated his right to confrontation pursuant to the United States Constitution. The trial court overruled Becerra's objections and gave him a running objection to the testimony. On appeal, Becerra also contends that the statements admitted went beyond those that were inconsistent with Michelle's testimony, that the evidence did not actually constitute impeachment evidence, and that the evidence was admitted for all purposes rather than impeachment evidence. Those objections were not made to the trial court, however.

Error is not properly preserved when the contention urged on appeal does not comport with the specific complaint made in the trial court. *Lovill v. State*, 319 S.W.3d

687, 691-92 (Tex. Crim. App. 2009); *Pena v. State*, 285 S.W.3d 459, 464 (Tex. Crim. App. 2009). An objection stating one legal basis may not be used to support a different legal theory on appeal. *See Heidelberg v. State*, 144 S.W.3d 535, 537 (Tex. Crim. App. 2004). Therefore, Becerra's complaints regarding the scope of the testimony, whether or not the evidence constituted impeachment evidence, or whether it was admitted for the limited purpose of impeachment testimony or for all purposes have not been preserved for our review and we will not address them further.

RIGHT TO CONFRONTATION

The Sixth Amendment protects an accused's right to be confronted with the witnesses against him in all criminal prosecutions. U.S. CONST. amend. VI. In *Crawford v. Washington*, the Supreme Court held this to mean that the admission at trial of a testimonial, out-of-court statement is barred by the confrontation clause, unless the defendant has had a prior opportunity to examine the witness and the witness is unavailable to testify. *Crawford v. Washington*, 541 U.S. 36, 68, 124 S. Ct. 1354, 158 L. Ed. 2d 177 (2004). Hearsay—an out-of-court statement offered in evidence to prove the truth of the matter asserted—may be admissible under the evidentiary rules. *See* TEX. R. EVID. 801(d). But hearsay statements nevertheless must overcome the confrontation clause bar, which may be implicated if the defendant is not afforded the opportunity to confront the out-of-court declarant. *Shuffield v. State*, 189 S.W.3d 782, 790 (Tex. Crim. App. 2006).

However, statements that are properly offered and admitted not to prove the truth

of the matter, but rather for a non-hearsay purpose do not implicate confrontation clause rights and are admissible under *Crawford*. *See Del Carmen Hernandez v. State*, 273 S.W.3d 685, 688-89 (Tex. Crim. App. 2008) (concluding such where co-defendant's statement to police was offered and admitted as non-hearsay to impeach co-defendant's credibility). The State contends that Rule 806 of the Rules of Evidence is one such non-hearsay purpose.

Rule 806 of the Rules of Evidence states in pertinent part:

> When a hearsay statement … has been admitted in evidence, the declarant's credibility may be attacked, and then supported, by any evidence that would be admissible for those purposes if the declarant had testified as a witness. The court may admit evidence of the declarant's inconsistent statement or conduct, regardless of when it occurred or whether the declarant had the opportunity to explain or deny it.

TEX. R. EVID. 806. Here, the State expressly stated that it was seeking to admit the testimony for the purpose of impeaching Michelle's testimony that Sylvia had told her that Becerra asked for drugs rather than a gun and not for the truth of the matter asserted.

The statements made by Sylvia to the detective at issue here were offered by the State in order to attack Michelle's credibility regarding her responses to the questions asked during Becerra's cross-examination of Michelle regarding what Sylvia had said about what it was that Becerra asked her to bring to him. Therefore, they were not offered for the truth of the matter asserted and the Confrontation clause was not implicated. Becerra's failure to request a limiting

instruction or to object to the trial court's failure to give a limiting instruction does not alter the fact that the evidence was admissible for a non-hearsay purpose. We overrule issue four.

**CONCLUSION**

Having found no reversible error, we affirm the judgment of the trial court.

TOM GRAY
Chief Justice

Before Chief Justice Gray,
     Justice Davis, and
     Justice Neill
Affirmed
Opinion delivered and filed June 12, 2019
Publish
[CRPM]

