

# IN THE
# TENTH COURT OF APPEALS

### No. 10-21-00115-CR

**ANDRE TYRON KELLEY,**

**Appellant**

**v.**

**THE STATE OF TEXAS,**

**Appellee**

### From the 54th District Court
### McLennan County, Texas
### Trial Court No. 2018-1573-C2

## MEMORANDUM OPINION

Andre Tyron Kelley was convicted of deadly conduct for discharging a firearm (Count II) and unlawful possession of a firearm by a felon (Count III), both as a habitual offender and enhanced. *See* TEX. PEN. CODE §§ 22.05(b)(1); 46.04(a)(1); 12.42. Kelley was sentenced to 25 years in prison for each count. Because the evidence was sufficient to support each conviction, the trial court's judgments are affirmed.

### SUFFICIENCY OF THE EVIDENCE

In two issues, Kelley challenges the sufficiency of the evidence to support his

convictions, challenging only the evidence relating to the possession or use of a firearm.

The Court of Criminal Appeals has expressed our standard of review of a sufficiency issue as follows:

> When addressing a challenge to the sufficiency of the evidence, we consider whether, after viewing all of the evidence in the light most favorable to the verdict, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979); *Villa v. State*, 514 S.W.3d 227, 232 (Tex. Crim. App. 2017). This standard requires the appellate court to defer "to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Jackson*, 443 U.S. at 319. We may not re-weigh the evidence or substitute our judgment for that of the factfinder. *Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007). The court conducting a sufficiency review must not engage in a "divide and conquer" strategy but must consider the cumulative force of all the evidence. *Villa*, 514 S.W.3d at 232. Although juries may not speculate about the meaning of facts or evidence, juries are permitted to draw any reasonable inferences from the facts so long as each inference is supported by the evidence presented at trial. *Cary v. State*, 507 S.W.3d 750, 757 (Tex. Crim. App. 2016) (*citing Jackson*, 443 U.S. at 319); *see also Hooper v. State*, 214 S.W.3d 9, 16-17 (Tex. Crim. App. 2007). We presume that the factfinder resolved any conflicting inferences from the evidence in favor of the verdict, and we defer to that resolution. *Merritt v. State*, 368 S.W.3d 516, 525 (Tex. Crim. App. 2012). This is because the jurors are the exclusive judges of the facts, the credibility of the witnesses, and the weight to be given to the testimony. *Brooks v. State*, 323 S.W.3d 893, 899 (Tex. Crim. App. 2010). Direct evidence and circumstantial evidence are equally probative, and circumstantial evidence alone may be sufficient to uphold a conviction so long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction. *Ramsey v. State*, 473 S.W.3d 805, 809 (Tex. Crim. App. 2015); *Hooper*, 214 S.W.3d at 13.

> We measure whether the evidence presented at trial was sufficient to support a conviction by comparing it to "the elements of the offense as defined by the hypothetically correct jury charge for the case." *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). The hypothetically correct jury charge is one that "accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately

describes the particular offense for which the defendant was tried." *Id.*; *see also Daugherty v. State*, 387 S.W.3d 654, 665 (Tex. Crim. App. 2013). The "law as authorized by the indictment" includes the statutory elements of the offense and those elements as modified by the indictment. *Daugherty*, 387 S.W.3d at 665.

*Zuniga v. State*, 551 S.W.3d 729, 732-33 (Tex. Crim. App. 2018).

A person commits deadly conduct if he knowingly discharges a firearm "at or in the direction of" an individual. TEX. PEN. CODE § 22.05(b)(1). A person who has been convicted of a felony commits the offense of unlawful possession of a firearm by a felon if he possesses a firearm after conviction and before the fifth anniversary of the person's release from confinement following conviction of the felony, community supervision, mandatory supervision, or parole, whichever is later. TEX. PEN. CODE § 46.04(a)(1).

### *Unlawful Possession of a Firearm by a Felon*

Because Kelley discusses the sufficiency of the evidence to support this conviction first, we do so as well. The State was required to prove beyond a reasonable doubt that Kelley was a felon who was unlawfully in possession of a firearm. *See* TEX. PEN. CODE § 46.04(a). Kelley does not dispute that he is a felon, but argues that there was insufficient evidence to link him to the firearm. A person commits a possession offense only if he voluntarily possesses the prohibited item. TEX. PEN. CODE § 6.01(a). Possession is a voluntary act "if the possessor knowingly obtains or receives the thing possessed or is aware of his control of the thing for a sufficient time to permit him to terminate his control." *Id.* § 6.01(b).

We analyze the sufficiency of the evidence of possession of a firearm under the same rules adopted for determining the sufficiency of the evidence in drug possession

cases. *Majors v. State*, 554 S.W.3d 802, 806 (Tex. App.—Waco 2018, no pet.); *Bates v. State*, 155 S.W.3d 212, 216 (Tex. App.—Dallas 2004, no pet.). Thus, the State must prove Kelley (1) exercised care, custody, control, or management over the firearm; (2) was conscious of his connection with it; and (3) possessed the firearm knowingly or intentionally. *See* TEX. PEN. CODE § 1.07(a)(39); *see also Greer v. State*, 436 S.W.3d 1, 5 (Tex. App.—Waco 2014, no pet.). The State does not have to prove that Kelley had exclusive possession of the firearm; joint possession is sufficient to sustain a conviction. *Cude v. State*, 716 S.W.2d 46, 47 (Tex. Crim. App. 1986); *Bollinger v. State*, 224 S.W.3d 768, 774 (Tex. App.—Eastland 2007, pet. ref'd). Further, the State can meet its burden with direct or circumstantial evidence, but it must establish that Kelley's connection with the firearm was more than fortuitous. *Brown v. State*, 911 S.W.2d 744, 747 (Tex. Crim. App. 1995); *Majors*, 554 S.W.3d at 806.

Because the firearm was not found on Kelley's person or in his exclusive possession, additional facts must affirmatively link Kelley to the firearm. *Greer*, 436 S.W.3d at 5; *Jones v. State*, 963 S.W.2d 826, 830 (Tex. App.—Texarkana 1998, pet. ref'd). Factors that may establish those links include, but are not limited to, the following: whether the firearm was in a car driven by the accused, whether the firearm was in a place owned by the accused, whether the firearm was conveniently accessible to the accused, whether the firearm was found in an enclosed space, and whether the accused made any affirmative statement connecting him to the firearm. *See Bollinger*, 224 S.W.3d at 774; *Corpus v. State*, 30 S.W.3d 35, 38 (Tex. App.—Houston [14th Dist.] 2000, pet. ref'd). *See also Majors*, 554 S.W.3d at 806 (additional factors listed). No set formula of facts exists

to dictate a finding of affirmative links sufficient to support an inference of knowing possession. *Greer v. State*, 436 S.W.3d 1, 5 (Tex. App.—Waco 2014, no pet.); *Taylor v. State*, 106 S.W.3d 827, 830 (Tex. App.—Dallas 2003, no pet.). The affirmative links ordinarily emerge from a composition of several factors and the logical force they have in combination. *Bollinger*, 224 S.W.3d at 774.

*Application*

The victim first saw the firearm, a handgun, when Kelley was choking her and holding the gun to her face, threatening to pull the trigger. This occurred in a bedroom where the victim had been laying on a mattress on the floor with her baby. The victim testified that the gun was black and was the same one she had seen in a photograph shown to her after the offense. Later, Kelley threw the victim against the bedroom wall and fired the gun in the victim's direction. She described the shot as coming toward her in a downward direction, a detail that was confirmed by the crime scene technician after discovering a fresh bullet hole in the wall in the bedroom where Kelley and the victim had struggled. A gun was found underneath the corner of the mattress in that same bedroom. Its safety was off, and a bullet was in the chamber, ready to be fired. Several photographs of the gun and where it was located were introduced into evidence. A single spent casing was found in the bedroom. Although there was no DNA analysis performed on the gun and fingerprint analysis was inconclusive, the brand and caliber of the spent casing matched the brand and caliber of the live bullets found in the gun's chamber and the magazine. Also, while there was no evidence that Kelley owned the home where the gun was located, there was testimony that Kelley and the victim had been in a dating

relationship since 2015 and had lived together since Kelley's release from prison in 2017. Further, Kelley, the victim, and the victim's baby were the only people in the home at the time of the offense.

After viewing the evidence in the light most favorable to the verdict and in light of the affirmative link factors, any rational trier of fact could have found that Kelley was in possession of a firearm. Kelley's first issue is overruled.

### *Deadly Conduct*

In his second issue, Kelley argues that because the evidence was insufficient to prove he possessed a firearm, the evidence is necessarily insufficient to prove he discharged a firearm. However, after viewing the evidence in the light most favorable to the verdict, any rational trier of fact could have found that Kelley discharged a firearm. Kelley's second issue is overruled.

### CONCLUSION

Having overruled each of Kelley's issues, we affirm the trial court's judgments.

TOM GRAY
Chief Justice

Before Chief Justice Gray,
     Justice Smith, and
     Justice Rose[1]
Affirmed
Opinion delivered and filed October 12, 2022
Do not publish
[CRPM]



---

[1] The Honorable Jeff Rose, Former Chief Justice of the Third Court of Appeals, sitting by assignment of the Chief Justice of the Texas Supreme Court. *See* TEX. GOV'T CODE §§ 74.003, 75.002, 75.003.